BALTZELL AND CHAPMAN, APPELLANTS, vs. THOMAS P. RANDOLPH, APPELLEE.

1. Relief will be granted in equity against a judgment at law when the defence could not *at the time*, or *under the circumstances*, be made available at law, *without any laches of the party*.

2. So, if a fact material to the merits *should be discovered after a trial*, which could not, *by ordinary diligence*, have been discovered before, the like relief will be granted.

This case was decided at Tallahassee.

The facts of the case are sufficiently stated in the opinion of the Court.

*Thomas Baltzell*, for appellants :

The excuse that complainant was prevented through ignorance of the facts from making his defence at law, is disproved by the allegations of his bill asserting " that *since*

*the bringing of the said* suit, he has discovered," &c. And again : " *a short time previous to the term* at which said judgment was rendered, your orator understood that the suit was brought on a contract not made by your orator at all, or *by the firm of which he was a member.*"

It is more completely disproved by the four pleas filed in the suit, one of them asserting that there was no contract to which there was issue joined, and the three others demurred to, all of them withdrawn by defendant, and judgment allowed to go by confession.

In like manner the allegation that it was not his contract or that of the firm of which he was a member, is disproved by the distinct admission of the bill, " that the original draft, as drawn by the old firm of C. M. Harris & Co., became *due shortly after your orator and the said Harris became partners*, and by some arrangement between the said B. and C. and the said Harris, the said draft was *renewed by said Harris* in the same manner as the original draft, to wit: *in the name of C. M. Harris & Co.*" "It was understood by the parties that it was intended for the old firm, and the parties taking the draft received it as the paper, not of your orator and said Harris, but as the paper of said Lines & Harris" (the old firm of C. M. Harris & Co.) "During the existence of the first firm, he, Harris, contracted the debt," &c.

The defendants, B. & C., deny the allegations of the bill, insist that they were purchasers of the note as negociable paper for a fair consideration, and require proof of the allegations of the bill.

Harris objected to as a witness incompetent to impeach his own act—deposing that " he does not recollect the date of the note, or whether Mr. Randolph was a partner at the time it was given in lieu of the draft, and had no means of ascertaining it; says that he was associated with Lines until his death in 1850, after which he continued business without

any partner until August, 1851, when T. P. Randolph associated with me, and we continued business until November or December of the same year."

The note sued on is dated October 17th, 1852.

If credit be given to this statement of Harris, the note sued on was made by him ten months after the dissolution of the partnership, which would involve him as having committed the heinous crime of making a partnership note when there was no firm. He states that he does not recollect in this respect, so that his statement should be rejected entirely, the more so as it is directly opposed to the admission of the bill, that the note was given during the partnership of Randolph & Harris. Nor does the statement of this same witness, that "the transaction *originating the draft* was had by me before Mr. Randolph associated with me," conflict with that of Randolph & Harris making it. This refers to a draft accepted by C. M. Harris & Co., dated 17th April, 1852, and given to the same party, and not to the note on which judgment was rendered. The witness says nothing as to any agreement of the parties that the note was taken, not as the paper of Randolph & Harris, but of Harris & Lines.

Such is the case—such are the allegations—such the proof on which the judgment of one of the Superior Courts of the country is asked to be set aside—the main allegations of the bill distinctly admitted and proved by it to be false and untrue. Complainant could not make defence through ignorance of the facts before judgment. He did know them before judgment—he made defence by filing pleas—he did not make the contract at all nor the firm of which he was a member. They did make it, but with an agreement that another firm and not themselves were to be bound. Plaintiff's witness shows that no firm made it, although he signed the note as a partnership transaction. What decree can be made upon a bill contradicting itself in its main and important al-

legations, or upon proof contradictory of itself and of the allegations of the bill? If Courts of justice do not respect, uphold and maintain their own judgments, who else may be expected to do it? If, upon such pretext and under such circumstances, this judgment may be set aside, what one is safe even after full trial?

That Randolph was incompetent as a witness. 3 Howard Sup. Ct.

That he incapacitated himself. Gresley, 333; 2 Chitty Ev., 942$n$.

There is no proof of other allegations in the bill of the infancy, youth, inexperience, &c., of complainant; they are therefore not noticed.

*D. P. Hogue* for appellee.

WALKER, J., delivered the opinion of the Court.

At the Fall Term of 1854, of Gadsden Circuit Court, appellants obtained judgment vs. appellee, for $655.37, and on 28th December, 1854, execution was issued and being levied on the property of the appellee, the bill in this case was filed for an injunction, which being granted and made perpetual, appellants brought the case to this Court.

In determining whether the Circuit Court erred in granting and perpetuating the injunction, two questions are to be considered. First, whether the equity of the case is with appellee; and second, whether he has not by his negligence lost his right to come into equity.

It appears from the testimony of C. M. Harris, the only witness examined in this cause, that the judgment is based on a note signed " C. M. Harris & Co.," but that appellee was not at the time said note was made, and had not been for near a year prior to that time, a member of said firm of " C. M. Harris & Co.," and moreover, that appellee had no con-

nection whatever with the debt said note was given to se-
cure, said debt being the individual debt of said C. M. Har-
ris, contracted by him before his partnership with appellee,
and in which appellee had no interest, and for which he
never in any way rendered himself responsible. From this
evidence we have no difficulty in concluding that the equity
of the case is clearly with appellee.

But why did not appellee set up these facts as a defence
against the suit at law? In failing to do so, has he not been
guilty of such negligence as will deprive a Court of Equity
of the power to give him relief?

The rule on this subject as laid down by Judge Story, and
supported by all the authorities, is as follows :

" Relief will be granted when the defence could not, *at the
time*, or *under the circumstances*, be made available at law,
*without any laches of the party.* Thus, for instance, if a
party should recover a judgment for a debt, and the defend-
ant should afterwards find a receipt under the plaintiff's own
hand for the very money in question, the defendant, when
there was no laches on his part, would be relieved by a per-
petual injunction in equity. So, if a fact material to the
merits should *be discovered after a trial*, which could not *by
ordinary diligence* have been ascertained before, the like re-
lief would be granted."—See 2 Story's Equity, 894.

Adopting this as the true rule, let us see whether defend-
ant could not, *at the time*, or *under the circumstances, without
any laches on his part*, have availed himself of the defence
as now disclosed by the testimony of Harris : or whether,
*after the judgment*, he has discovered any fact *material to the
merits*, which he could not, by *ordinary diligence*, have as-
certained before the judgment.

The appellee in his bill says : " Your orator further states
that the reason of his not availing himself of this defence at
law, was owing to his entire ignorance, *at the time*, of any

of the foregoing facts;" and again: "your orator could not ascertain, until after the judgment, what were the real facts in the case."

He of course could not avail himself of a defence of which he was at the time entirely ignorant; but the question recurs, was this entire ignorance "without any laches on his part," and might he not, "by ordinary diligence," have informed himself? To answer these questions, it will be necessary for us to review all the facts and circumstances disclosed by the record.

It appears that in August, 1851, appellee being then "very young and inexperienced in business," formed a co-partnership with C. M. Harris, at Chattahoochee, Fla., under the name, style and firm of "C. M. Harris & Co." This partnership lasted only a few months, when it was dissolved, and appellee withdrew from the business, leaving all its assets in the hands of Harris, and commenced business in Tallahassee in his own name. Whilst residing in Tallahassee, suit was commenced against him and Harris in Gadsden County, on 22d February, 1854. He acknowledged service of the writ, which was sent to him in Leon County on February 25, 1854. The declaration was filed in Gadsden County on 6th March, 1854, with a copy of the note sued on, which was a note for $603.95, dated October 17, 1852, and signed "C. M. Harris & Co."

While it is certainly the duty of every defendant, so soon as he shall be served with process, to look at once and closely to his defences, yet there may be circumstances so well calculated to lull him into repose that it would be inequitable to make him suffer for yielding in some measure to their influence. What was the reasonable conclusion to which the mind of appellee might arrive on finding himself sued as a member of the firm of "C. M. Harris & Co."? We think he might, without blame, have concluded that said suit was

brought on some legitimate demand against said firm, and, inasmuch as he had left all the assets of the concern in the hands of Harris, who resided in the county where the suit was brought, that said Harris would attend to it. Under this delusion, the appellee seems to have labored until "*a short time* before the term of the Court at which said judgment was rendered," when he says he "*understood*" (by which we understand from other parts of his bill that he means that he *suspected*,) "that said suit was brought upon a contract not made by him or by the firm of which he had been a member."

Thus suddenly aroused from a state of lethargy into which, under the circumstances of the case, we cannot condemn him for having indulged, the appellee found himself hedged round by difficulties in the way of getting correct information how to construct his defence, and evidence to sustain it. He had no access to the books. Harris, who had repeatedly put him off by telling him that all should be so managed that he should not be damaged, was then lying sick at Chattahoochee, so that no information could be obtained from him, and the confidential clerk of the firm had departed to some place unknown. It is difficult to say what the appellee could have done under the circumstances. He seems, however, not to have become entirely inactive. He filed several pleas, but what they were we can only conjecture from the replication and demurrer to them, which appear in the record, though the pleas themselves do not appear.

The same cause which prevented appellee from making his defence at law, also prevented him from being able to make the affidavit required for a continuance or for a new trial. He was ignorant of the facts, and knew not where he could find a witness to prove them. It was urged in argument that he might have examined General Milton, but it does not appear that Gen. Milton knew then, or even now

knows the facts of the case. It was also suggested that he might have obtained by bill a discovery from Harris, but Harris being a party to the record, his testimony could not be made available at law. Nor could appellee file a bill for injunction, being unable at that time to swear to such facts in his bill as would entitle him to an injunction. Being thus powerless to defend himself, appellee withdrew his pleas and suffered judgment by default. Having done so under the circumstances hereinbefore stated, and having now produced before this Court conclusive evidence that he does not owe and never did owe any part of the debt for which judgment was rendered against him, we are of the opinion that he is entitled to the relief for which he prays.

Therefore let the decree of the Circuit Court be affirmed with costs.

*Forward, J.* While I concur with the majority of the Court in the rule of law laid down by them, and also agree that were the appellee entitled to the relief he asks, the evidence would be sufficient; yet I do not think the facts as disclosed in the bill, show that the appellee could not, by proper vigilance, have protected himself from injury in the suit at law.

Thomas Baltzell, counsel for appellants, filed a petition for a rehearing, which was refused.