NIXON v. HARMON.

1. DEED—CORRECTION OF.—Where it appears that certain real estate was included in a deed, by mistake, the same may be corrected at the suit of the grantor.
2. TRIAL—PRESUMPTIONS TO FINDINGS BY THE COURT.—When a cause is tried to a court without a jury upon oral evidence, the same presumptions in favor of the findings will be indulged in upon appeal as obtain in favor of verdicts by juries.

*Error to District Court of Arapahoe County.*

Messrs. BROWN & PUTNAM, for plaintiff in error.

Mr. CHARLES J. HUGHES, and Mr. E. T. HARTMAN, for defendant in error.

CHIEF JUSTICE HAYT delivered the opinion of the court.

Defendant in error, Lou G. Harmon, filed her complaint in the district court to cancel a conveyance to plaintiff in error, James J. Nixon, of plats 8, 9 and 10 in block No. 47, in Harmon's subdivision of the city of Denver. A trial to the court without the intervention of the jury resulted in findings and judgment for the defendant in error.

The power of a court of equity to grant the relief demanded in this case is not contested, and it is also conceded that this may be done upon parol evidence. The only question, therefore, to be considered in this review is upon the evidence. Plaintiff in error contends that the evidence is sufficient to support the decree.

Although a number of other witnesses were examined, the only evidence pertinent to the issue was given by E. P. Harmon for the defendant in error, and by James Nixon for plaintiff in error. The case as made by Mr. Harmon is in substance this : That he was the agent and attorney in fact for his wife, Lou G. Harmon, in making the sale of the plats in question. That in January, 1886, Nixon came to his office and wanted to purchase plats 6, 7, 8, 9 and 10 in block No. 48 of Harmon's subdivision. That as the result of that conversation he agreed to sell and plaintiff in error agreed to buy the five plats for $300, payment to be arranged within a few days thereafter. That in pursuance of this agreement, Mr. Harmon as attorney in fact for defendant in error executed a deed for the five plats, January 28, 1886, and placed the same in his safe. The consideration mentioned in said deed being $300. This witness further testified that Nixon came back on the 30th day of January, and stated that he could not raise sufficient money to pay for the five plats, and asked for the price upon plats 6 and 7 separately. That after some conversation it was finally agreed that he should have 6 and 7 for $125 ; $100 to be paid down and the balance in a few days afterward. At this time he delivered to him the deed theretofore executed, for the entire five plats, according to the first agreement. The witness further testified that he sold him only plats 6 and 7 and that the deed including plats 8, 9 and 10 was delivered to him by mistake.

The witness also testified that he did not discover the mistake until he found out from some one who wanted to buy the plats that Nixon made some claim to them. This was in September, 1886. "I then went to see Nixon ; told him he only bought plats 6 and 7, that he paid $125 for them, that he refused to take the five for $300, as first agreed. He admitted that he only paid $125, but claimed this was for the entire five plats. I asked to see the deed ; called his attention to the $300 consideration named in the deed. Told him there was a mistake in the deed, that 8, 9 and 10 should not be in the deed, that he never bought or paid for them ; told

him if he would deed back 9 and 10 he could keep 8. He wanted to know what I would take and let the matter stand. Told him $160. Said he could pay $60 next pay day,—the middle of October—and I told him if he would pay $60 at that time I would wait a reasonable time for the balance. He agreed to do it. Waited some time after the middle of October, and as he did not come I went to see him on the 27th day of Oct., 1886. He then told me, for the first time, that he had paid me $300 for the plats, in twenty dollar gold pieces. I said to him, 'It is not so, and I will make it hot for you * * *.' The first intimation that I had that he had claimed that he had paid $250 for the property, was when I saw his answer in this case." Nixon, a witness in his own behalf contradicts the testimony of Harmon in all substantial particulars. He states that Harmon first asked $300 for the five plats, but he finally purchased them for $250. He further testifies that when he paid Harmon for said plats he put the following question to him:

Q. " Isn't there something you are to give me, like in token of this money? I declare to goodness to this day I didn't know the name of it—of a receipt."

This witness further testifies that he saw Harmon next on the 22d day of Oct., 1886.

" He came down; I was busy at the time. I was always busy, for I was doing five or six men's work for very small wages."

The court: Q. " Do you mean he, Harmon, didn't say anything the second time he was there? " A. " No, sir."

The court: Q. " He just came there and said nothing? " A. " He just came there and said nothing and went away when I began to talk."

The court: Q. " He never had complained to you that there was any mistake about it? " A. " No, your Honor."

The court: Q. " Nor any mistake about the money? " A. " No, your Honor."

The court: Q. " Then what did you want to recite the

whole matter over to him for?"   A. "Because I could see, your Honor, that was wrong, that he had forgotten."

The court: Q. "How do you know that he had forgotten?" A. "By his action. Why didn't the gentleman speak to me if he had a clear, honest conscience?"

Harmon testifies that he made two visits to Nixon for the purpose of having the alleged mistake rectified. Nixon admits that he made these visits, but says that he did not complain to him upon either occasion, that there was any mistake about it. And upon the second visit, he, Nixon, said nothing upon this or any other subject. Harmon states, and it is apparent from the circumstances, that he went there both times for the purpose of having the matter adjusted. It is hard to reconcile this with the statement made by Nixon, that no claim was made upon either occasion that a mistake had occurred, or with his testimony to the effect that upon the last visit Harmon said nothing whatever, and it is also improbable that Nixon was not more familiar with receipts than he admitted in his testimony, as he had previously testified that he had for years collected the freight bills for the Denver, Utah & Pac. R. R. Co., and the uncontradicted evidence shows that the collections thus made by him during certain seasons of the year, amounted to from $150 to $200 daily.

As tending to contradict the testimony of Harmon, counsel call attention to a certain scratch-pad upon which the witness did some figuring at the time of the sale of the property. It is only by an ingenious argument that these figures can, by any inference, be made to subserve this purpose of counsel. We think it rather tends to corroborate the testimony of Harmon, who apparently testified in a straightforward manner in reference to the entire transaction. The testimony of Nixon, on the contrary, is so inconsistent with itself and his statements are so improbable, that it should not be a matter of surprise that the district court gave the preference to the testimony of Harmon, and decided the case accordingly. Moreover, it has been time and again held by

this court, that the judgment of the trial court will not ordinarily be disturbed if based upon conflicting evidence of living witnesses produced before it.   Experience has taught that much may be learned from the appearance of the witnesses upon the stand and the general manner of testifying. In these respects, the judge presiding at the trial had advantages, which we have not.

In the absence of a showing to the contrary we must assume that the district judge properly understood the quantum of proof required to sustain a suit of this nature.   It cannot be denied that the evidence tended to support the complaint.   A jury having been expressly waived by the parties, the credibility of the witness and the weight to be given to the testimony of each was for the court below to determine.   And we see no legal reason for interfering with the conclusion reached.   The judgment will, therefore, be affirmed.

*Affirmed.*