### SNIDER v. RINEHART ET AL.

1. EQUITY—BILLS OF REVIEW.
    To obtain a new trial in equity, on the ground of newly discovered evidence, the complaint must show that the evidence was not discovered in time to have been used in the legal proceeding. If discovered in time to have been presented upon a motion for a new trial in the legal action, relief will be denied in equity.

2. SAME.
    Equity will not interfere with judgments at law where an adequate

remedy is provided in the legal action, which has been lost to the aggrieved party as the result of his own negligence.

3. Equity—Diligence.

Nothing can call a court of equity into activity but conscience, good faith, and reasonable diligence.

*Appeal from the District Court of El Paso County.*

George W. Snider, appellant, instituted this suit in the district court of El Paso county on January 5, 1893, against Charles Rinehart and Emma R. Austin, as the heirs of Rose Rinehart, deceased, to enjoin the enforcement of a judgment at law theretofore and on the 12th day of April, 1888, rendered against appellant in favor of said Rose.

The complaint is very voluminous, and among other things sets forth the history of the action at law in which the judgment was rendered, and is in brief as follows:

The complaint filed in that action on or about the first day of October, 1886, contained two causes of action. The first, and the only one necessary to be noticed upon this review, averred that she (Rose Rinehart) was the owner in fee and possessed of an undivided one half of the southwest quarter of section 32, township 13 south, of range 67 west, as tenant in common with the appellant Snider, who was the owner of the other half; that he had ousted her from, and unlawfully withheld the possession of, that part of the premises known as the Manitou Grand Caverns.

The appellant Snider admitted plaintiff's title to an undivided one half of the southwest quarter of section 32, township 13 south, of range 67 west, but denied that the Grand Caverns were situate thereon, and alleged that they were situate in the northeast quarter of the southeast quarter of section 31, township 13 south, of range 67 west, of which he was the sole and absolute owner in fee.

On the 30th day of November, 1887, the case was tried to a jury, and the sole issue submitted was whether the Grand Caverns were located on section 31 or 32, and the jury found

that they were upon section 31. The costs were paid, and a new trial was taken under the statute.

On the 12th day of April, 1888, the case was tried again to a jury, upon the same issue, and they found that the Grand Caverns were situated upon and within the limits of section 32; whereupon judgment was rendered in favor of plaintiff in that action, that she have and recover an undivided one half of the cave in question, and that writ of possession issue, placing her in possession. The defendant Snider paid the costs, and the case was by the clerk reinstated on the docket, and remained thereon from term to term, until at a special and adjourned term on June 10, 1889, when a motion to vacate the judgment was denied, the case stricken from the docket, and a writ of possession ordered to issue to put plaintiff in possession. From this judgment the defendant prayed an appeal to the supreme court, which was granted; and thereafter, and at the September term, 1892, the judgment of the court below was affirmed. *Snider v. Rinehart*, 18 Colo. 18.

Upon the last trial of the cause, the monument or stone marking the north corner of sections 31 and 32 not having been found, it was assumed to be a lost corner, and there being a shortage or deficiency on the north line of the two sections, the shortage was apportioned and the corner established, and by such apportionment the caverns in question were shown to be in section 32, and the jury so found. But shortly after this trial, and some time during the month of June, 1888, plaintiff alleges that he by accident discovered the stone marking such corner, in position, where it was placed by the government surveyor at the time of making the original survey in 1871; and avers that the country around and about said section corner is wild, broken and mountainous, and very precipitous, the surface of the ground being covered with or made up of broken fragments of stone and rock slag, and that all efforts theretofore made to find the corner were unavailing; and that he had, by the exercise of diligence, been unable to discover its whereabouts

in time to produce evidence of its location at the former trial; that by means of such corner the true boundary between sections 31 and 32, as established and subdivided by the United States government survéy, could be readily determined, and that such boundary line shows each and every part of the caverns in question to be entirely and wholly within the boundaries of section 31.

While the complaint contains allegations of fraudulent conduct on the part of Rose Rinehart and her representatives, in removing interior corners, no evidence was introduced to sustain such allegations. The appellees, by their answer, deny the material averments of plaintiff's complaint, the validity of this corner and the manner of its discovery, and the exercise of such diligence on the part of plaintiff as will entitle him to the relief sought.

Upon the trial of the cause a large number of witnesses testified, and upon the testimony introduced the court below made the following findings:

"1. That what is termed in the evidence the 'Snider' monument is the true government corner, as established by the original government survey, and is in the place where it was originally located. This fact is established by a clear preponderance of the testimony, although I cannot say it has been established beyond all doubt.

"2. That the plaintiff used reasonable diligence to discover the said monument, and failed to do so, before the trial at law between plaintiff (then defendant) and Rose Rinehart, plaintiff, on April 12, 1888.

"3. That under the practice of Colorado it was generally understood, during the years 1888 and 1889, that in an ejectment action, after the first unfavorable verdict, the unsuccessful party could obtain a new trial by simply paying the costs before the next succeeding term of the court, and that this practice was quite generally adopted by the courts and by the bar of the state.

"4. The adopting the 'Snider' monument as the true corner for sections 29, 30, 31 and 32, and from that corner draw-

ing the line between sections 31 and 32 to the township line on the south, it is found that the caverns in controversy in this suit will be in section 31.

" It may be proper to add that there is no proof whatever to show any fraudulent act by any party in the action at law, nor is there any showing that the trial was not fair and impartial.

" I am constrained to deny to the plaintiff the relief he seeks in this action, for the reason, briefly stated, that I do not think the facts meet the requirements demanded by equity, when it is sought to overthrow a judgment that is impeached for fraud."

Messrs. THOMAS, HARTZELL, BRYANT & LEE and Mr. M. F. TAYLOR, for appellant.

Messrs. WELLS, McNEAL & TAYLOR, for appellees.

Messrs. RIDDELL, STARKWEATHER & DIXON, amici curiæ.

CHIEF JUSTICE HAYT delivered the opinion of the court.

This is a suit in equity to set aside a judgment at law. The properties involved are the Grand Caverns, situate near Manitou, El Paso county, Colorado. The suit at law was commenced on the first day of October, 1886. In that action the principal, if not the sole, question involved was whether the Grand Caverns are in section 31 or section 32 of township 13 south, of range 67 west.

Two trials were had in the original suit,—the first in November, 1887, resulting in a verdict and judgment to the effect that the Grand Caverns were in section 31; the second trial occurred in the following month of April, and resulted in a verdict and judgment awarding the Grand Caverns to section 32.

After the second trial the defendants paid the costs, but

made no effort, by motion or otherwise, to obtain a new trial until more than one year had elapsed, viz., at the June term, 1889, at which time a motion to vacate the judgment was denied and the case stricken from the docket. From this judgment an appeal was taken to this court, and the judgment affirmed at the September term, 1892. The present action was not commenced until after the latter judgment was rendered. The controversy for the possession of these caverns had been pending in the courts for six years before the present action was commenced. Since the institution of the first suit two of the defendants have died.

I think it is apparent from the foregoing statement that the judgment at law should not be opened in this proceeding, except for the most cogent reasons. Relief was denied in the district court for the reason that the judgment at law was sought to be impeached for fraud, and the court found that there was no proof whatever of such fraud, nor any showing that the trial at law was not fair and impartial.

It is not now contended that there was any fraud practiced in either of the trials at law, the effort here to open the judgment being based entirely upon newly discovered evidence that could not, as it is claimed, have been made available in the previous trials at law. But the fact that the district judge conceived that the sole matter involved was a question of fraud in fact in the trial at law should not be a matter of surprise in view of the pleading, it being charged in the complaint, on information and belief, that the Rineharts had fraudulently procured the removal of the government corners for the purpose of making it impossible to ascertain the boundary line between sections 31 and 32.

As the record before us is entirely free from evidence showing or tending to show fraud in fact, we may dismiss this allegation of the complaint without further notice.

Is the plaintiff Snider entitled to have the judgment at law set aside and a new trial awarded in the action at law by reason of newly discovered evidence? The new evidence upon which plaintiff predicates this suit relates solely to the

location of the government corner on the north between sections 31 and 32, this being one of the questions at issue between the parties in the two trials at law.

The evidence taken in the present proceeding shows that the corner claimed as a government corner is marked by a stone in size about 9 inches by 11 inches by 16 inches, weighing about one hundred pounds, protruding from the ground about nine inches, and marked by a monument of smaller stones, located near a pinon tree, the tree being marked by having the limbs cut off from one side, as is usual with surveyors in running a line.

Charles E. Liebold, a witness for the plaintiff, testified that he resided at East Manitou and had lived there fourteen years; that he had taken up a piece of land near the head of Williams' Canon, and that to inclose this land he had built a fence across the canon at the time. "It was on the line between me and Snider,—on my south line. I had a survey before the fence was built. I don't remember exactly when it was built, but I think between 1884 and 1885. Have been on the ground recently; was there last winter and yesterday." In answer to further interrogatories the witness testified, with reference to the existence of the corner in controversy: "There was a monument there, a pile of rock, what was shown to me as the corner, and what I supposed was the corner between me and Snider. * * * I was on the ground yesterday to refresh my memory, and I found a large stone there. The earth was dug up around it, and it was pretty close to what I have always supposed was that corner. It looked as though it had been tampered with or moved recently."

On cross-examination, the witness further testified: "The fence in that canon is very nearly on a line; I tried to get it as nearly on a line as I could. I do not remember when the survey was made, but I think between 1881 and 1884, and I always understood this was my southeast corner. * * * I can go right to it." * * * By further testimony the witness shows that the southeast corner, identified by

him as a common corner with Snider, is the corner claimed by plaintiff to have been recently discovered, and to establish which a new trial is asked, although this witness, further testifying, says " that he and (appellant) *Charles Snider had talked together about the corner frequently in 1884 and 1885, and that he could go right to it.*"

E. H. Kellogg, another witness introduced by the plaintiff, testified that he was a civil engineer and surveyor, and had been a resident of the state since 1868 ; that he was the government surveyor under whose direction the original survey of the township containing the Grand Caverns was made. The witness further testified that the survey was made in 1871 ; that the plat and field notes were filed in the surveyor general's office. The witness also testified that with these notes he located the corner in 1893, although the tree had been cut down, but not removed, and the pile of stones had been scattered about. This witness was not subpœnaed at either of the previous trials and did not then testify.

F. E. Baxter, another witness for the plaintiff, testified that he saw this corner shortly after it was claimed to have been rediscovered and that he saw near one of the corners a pole lying on the ground, which he thought might have been used as a site pole for a survey ; that the pole bore evidence of having been there for a number of years ; that if he had seen this pole, without knowing the location of the corner, the pole would have suggested a close search in the immediate vicinity for the corner.

The only evidence tending to show diligence in searching for the corner, on the part of the plaintiff, is negative in character, and to the effect that others had repeatedly searched without success. Common prudence should have suggested to the plaintiff, at least after one trial had been had, that inquiry should have been made of Kellogg, who had charge of the official survey, and of Liebold, the owner of an adjoining quarter section, and the former should have been engaged to rerun the lines, if necessary to locate the corner. *Holmes v. Stateler et al.,* 57.Ill. 209.

In the absence of such showing, if the trial court had dismissed the bill for want of diligence on the part of plaintiff in his efforts to ascertain this corner, the judgment would not be disturbed; but that court having expressly found that the plaintiff did use due diligence, and there being evidence to support this finding, perhaps it should not be disturbed in this court.

The finding, however, with reference to diligence is expressly limited to what was done before the trial at law on April 12, 1888, and we may therefore consider, without embarrassment by any findings made by the trial judge, what transpired after the last trial and at a time when a remedy was yet available in the action at law.

Plaintiff and other witnesses testified that he found the original government corner in controversy, the same being the corner on the north between sections 31 and 32, in the month of June succeeding the trial at law at the April term. In an action of ejectment the statute provides that the unsuccessful party may have a new trial upon application therefor, upon the payment of costs at any time before the next term of court. The next succeeding term began in the month of November, 1888. It will thus be seen that the defendant, the complainant here, had several months in which he might have obtained a new trial in the action at law by simply presenting a request therefor, as he did in fact pay the costs. Notwithstanding this remedy was open to him, he made no application for relief in the action at law before the next term of court, or for a long time thereafter. This delay was fatal. To obtain a new trial in equity on the ground of newly discovered evidence, the complainant must show that the evidence was not discovered in time to be used in the legal proceeding. If discovered in time to have been presented upon a motion for a new trial in the legal action, relief will be denied in equity. 3 Pomeroy's Eq. Jur., sec. 1365; 1 High on Inj., sec. 116; *Ferrell v. Allen*, 5 W. Va. 43; *Long v. Smith*, 39 Tex. 161.

It is said that a motion for a new trial in an action at law

and a bill for relief in equity are concurrent remedies, and in support of this proposition our attention is directed to the following cases: *Wright v. Hake*, 38 Mich. 525; *Metcalf v. Williams*, 104 U. S. 93; *Belmont v. The Erie Railway Co. et al.*, 52 Barbour, 637; *Young v. Sigler*, 48 Fed. Rep. 182.

In the first case cited it was urged that complainants lost their remedy in equity by moving for a third trial in the law action, and the court said: "There is nothing to this. It was very proper for them to get rid of the judgment in that court if they could, on any ground that was open to them." The court might have very properly added that it was necessary to do so to give them a standing in equity.

The case of *Metcalf v. Williams*, *supra*, does not support appellant's contention, as it is shown by the opinion that the complainant had appeared in the case at law and entered his plea of *nil debet*, but that judgment was afterwards entered without his knowledge or that of his counsel, as though no plea had been filed. Being taken by surprise, counsel moved the court to reinstate the cause upon the docket, but the judge doubting his authority to do so refused the motion. The complainant had done everything within his power to obtain relief in the law action, and the supreme court of the United States, sustaining a bill in equity to set aside the judgment, said: "Had not the term passed by, the district judge would undoubtedly have set aside the judgment, and reinstated the cause on the docket for trial. If, as he supposed, the passage of the term deprived him of power to do this, it became a proper case for equitable interference by bill." The court in the course of its opinion takes occasion to say that the firmly settled practice under which courts of law entertain motions for a new trial, coupled with the dislike of one court unnecessarily to interfere with proceedings in another, has caused the almost total disuse of that jurisdiction.

In the case of *Belmont v. The Erie Railway Company et al.*, *supra*, it is held that whatever can be done by motion to the court might, upon further motion by either party, be altered,

modified or wholly undone. There is nothing in the case that has any bearing upon the question we are considering.

The case of *Young v. Sigler*, *supra*, was a proceeding in equity to set aside a judgment at law. The cause was heard upon demurrer to the bill. In the bill it is alleged that the judgment was obtained by the fraud of plaintiffs, and that, although moving to that end, defendants were unable to obtain a new trial and are without remedy, according to the rules and practice of the court at law in which the judgment was rendered. The case was commenced in the year 1886, and a trial had in October of that year. It is further alleged. that the complainant did not obtain knowledge of the fraud practiced upon him until in November, 1890. I think it is apparent from the opinion which was rendered by Shiras, J., at *nisi prius*, that the fraud of which complainant complained did not come to his knowledge in time to be made available by motion for a new trial in the original action.

I find nothing in these cases necessarily at variance with the firmly established doctrine that equity will not interfere with judgments at law where an adequate remedy is provided in the law action, which has been lost to the aggrieved party as the result of his own negligence. If there is an exception to this general rule, such exception is confined to cases where the judgment is taken by fraud.

Mr. Pomeroy, in his work on Equity Jurisprudence, vol. 3, note 2, p. 402, says:

" The modern cases, where such judgments at law have been enjoined, will be found on examination to have arisen under the more general power, which equity clearly possesses, of setting aside the most solemn proceedings when tainted by fraud. The equitable jurisdiction to entertain bills for a new trial, if it exist at all, must be confined to a very few states."

As the plaintiff in this case, at the time of the discovery, had a remedy in the legal action, which he negligently failed to take advantage of, I am of the opinion that equity cannot grant relief. It is argued, however, that plaintiff was pre-

vented from taking advantage of his remedy in the law action by reason of a misunderstanding of the statute relating thereto, and the trial judge finds that under the practice of Colorado it was generally understood, during the years 1888 and 1889, that in an ejectment action, after the first unfavorable verdict, the unsuccessful party could obtain a new trial by simply paying the costs before the succeeding term of the court, and that this practice was quite generally adopted by the courts and by the bar of the state. Perhaps we should accept this finding as conclusive upon this review of the general understanding of the practice, although in all the years that the judges of this court have presided at *nisi prius*, and upon appellate tribunals, not one had ever heard of such a practice prior to this case. But, assuming that such was the practice, it is not sanctioned by the statute, but is in direct violation thereof. The mistake in this matter was one of law, from which the plaintiff cannot obtain relief in equity. Judgments at law would be entitled to slight consideration if they were subject to be set aside in equity for the reason here invoked.

Not only did plaintiff fail to move for a new trial in the law action, but he waited until nearly four years had elapsed after the rendition of judgment before instituting this proceeding. In this connection the language of this court upon the former appeal in this case is strongly in point, viz.:

"It is also a general principle that a defeated party desiring a new trial must be diligent in making application for it. Negligence or undue delay may defeat an application otherwise meritorious. It is the policy of the law to secure to parties litigant the termination of their legal controversies." *Snider v. Rinehart*, 18 Colo. 18.

In *Hunt v. Boyier*, 1 Marshall, p. 484, it is said:

"'*Vigilantibus non dormïentibus, servat lex*,' applies more emphatically to motions or bills for new trials than to any other class of cases." See, also, *Faulkner's Adm. v. Harwood*, 6 Rand. 125; *Embry v. Palmer*, 107 U. S. 3; *Pico v. Cohn*

*et al.,* 91 Cal. 129; *United States v. Throckmorton,* 98 U. S. 61; *Brown v. County of Buena Vista,* 95 U. S. 157.

There is another and conclusive reason for denying relief in the present action. The relief sought is inequitable. It is a fundamental principle of equitable jurisprudence that the party seeking relief must not only come into court with clean hands, but with a just, equitable and conscientious claim. In the terse language of Mr. Justice Swayne, in the case of *Sullivan v. The Railroad,* 94 U. S. 806, in speaking of the equity jurisprudence of the court,—"Nothing can call forth this court into activity but conscience, good faith, and reasonable diligence." See, also, High on Inj., sec. 114.

It is established beyond doubt that the newly discovered corner is not where the law requires it to have been placed, but several hundred feet away from such point, and admitting, for the purposes of this case, that this corner, if authenticated, would have controlled in the law action, it does not necessarily follow that the judgment will for this reason be set aside in equity, but it must be further shown that the judgment sought to be enjoined is inequitable. 2 Story's Eq. Jur. (12th Ed.) sec. 896; 1 High on Inj., sec. 114; *Holmes v. Stateler, supra.*

It is upon this principle that it has been held that although a party may have a cause of action at law for the breach of a contract, while the provisions of the contract itself may be so inequitable that if a court of equity be appealed to it would deny a decree for its enforcement. There are other defenses, such as the statute of limitations, the statute of usury, and the like, which are allowed and favored in law, but would be no ground upon which to invoke the jurisdiction of equity for the purpose of obtaining a new trial in order to give the party an opportunity to plead such statutes, although he might, as the result of excusable neglect, have been prevented from interposing the same in the law action. The United States statutes relating to the survey of the public lands provide, in section 2395, that such "lands shall be divided by north and south lines run according to the true

meridian, and by others crossing them at right angles, so as to form townships of six miles square. * * *

" The township shall be subdivided into sections, containing, as nearly as may be, six hundred and forty acres each, by running through the same, each way, parallel lines at the end of every two miles; and by marking a corner of each of such lines, at the end of every mile. The sections shall be numbered respectively, beginning with the number one in the northeast section and proceeding west and east alternately through the township with progressive numbers till the thirty-six be completed. * * *

" Where the exterior lines of the townships which may be subdivided into sections or half sections exceed, or do not extend six miles, the excess or deficiency shall be specially noted, and added to or deducted from the western and northern ranges of sections or half sections in such township, according as the error may be in running the lines from east to west, or from north to south."

It is conceded that section 31 is in the southwest corner of township number 13, and in the west tier of sections, and that the shortage should, under the statute, fall in section 31, while the attempt in this case is to deduct the shortage entirely from section 32, and none from section 31; and to accomplish this a new trial is asked for the purpose of establishing the controverted corner at a place other than that called for by the original field notes on file in the surveyor general's office, and to set aside the lines as established in the trial at law, and substitute therefor other lines that had been run in direct violation of the United States statutes.

In support of this proposition a number of cases have been cited in which it has been held that the monuments placed upon the ground must control, but in none of these cases has the discrepancy between the monuments and the lines as they should have been surveyed under the statute been more than a few feet, and it may well be doubted whether the rule giving preference to monuments should be extended to a case like the present, even in an action at law; but, however that

may be, after the lines have been once established, as in this case, after a protracted litigation at law, a court of equity should not set aside a judgment fairly obtained, in order to maintain a survey that is illegal, if not fraudulent.

Where a trial has been had and a judgment rendered at law, the judgment should not be set aside and a new trial awarded in equity, unless by so doing the ends of justice will be subserved. Such a case, in my judgment, is not disclosed by this record. Here we are asked to set aside a judgment upon a finding that the newly discovered corner is established by a preponderance of the evidence only, in a suit instituted years after the judgment was rendered and the new evidence discovered. The controversy has already been before the courts for upwards of eight years. Two of the original plaintiffs have died since its commencement. Should a new trial be awarded, counsel will not only be deprived of their advice and assistance in conducting the litigation, but their lips are also sealed. It is true that the testimony of these parties, as taken upon a former trial, is preserved in the record, but I apprehend that this testimony would be of but little avail upon a new trial upon the question of the authenticity of the alleged newly discovered corner, as their testimony upon the former trial was not directed to this point.

For the reasons given, the judgment should be affirmed.

MR. JUSTICE ELLIOTT (concurring with the Chief Justice on one point).

The attempt to impeach the former judgment on the ground of fraud is practically abandoned; but it is insisted that plaintiff is entitled to a new trial on the ground of newly discovered evidence. Plaintiff was possessed of the newly discovered evidence for a period of about five months, during which time he could have had the former judgment vacated and a new trial allowed by making application therefor to the court in the former action, in accordance with the statute. That mode of relief was plain, speedy and adequate. In my

opinion, plaintiff's negligence in not making application to have the former judgment vacated is conclusive against his right to seek the same relief by another action in the nature of a bill of review.   To this extent I concur in the opinion of Chief Justice Hayt.

My brother Goddard concedes that if plaintiff had opportunity to apply for a new trial on the ground of newly discovered evidence, under section 217 of the code, and neglected so to do, he would be precluded from seeking relief upon the same ground in a suit in equity.   I am unable to see why his neglect to apply for a new trial under section 272 of the code should not have the same effect.   To have secured a new trial under section 217 would have required a showing of diligence which might have been difficult to make, whereas he was entitled to a new trial under section 272 *as of right, without showing cause;* and a new trial, whatever the mode of obtaining it, would have afforded him the same relief.   As to other questions so ably discussed by my associates, I express no opinion.

*Affirmed.*

MR. JUSTICE GODDARD, dissenting.

After a careful and thorough examination of the record presented, I am unable to concur in either the conclusion of my learned associates, or in the reasoning upon which that conclusion rests.   It is of little moment, so far as the question before us is concerned, what the testimony of any individual witness was before the trial court, since that court, in the exercise of its peculiar province, has found that the weight of the testimony introduced sustained certain conclusions of fact, and, under the well settled doctrine of this court, these findings must be accepted as correct, and are not open for review upon appeal.   *Warren v. Adams,* 19 Colo. 515; *Nixon v. Harmon,* 17 Colo. 276; *Lundy v. Hanson,* 16 Colo. 267; *Riley v. Riley,* 14 Colo. 290; *Rico R. & M. Co. v. Musgrave,* 14 Colo. 79; *Rollins v. Board of Com.,* 15 Colo.

103; *Aspen Times Pub. Co. v. Russell*, 18 Colo. 75; *Wallace v. Giltinan*, 18 Colo. 473; *Castner v. Richardson*, 18 Colo. 496.

The sole question, therefore, for our consideration, is whether the facts found by the trial judge are sufficient to entitle the plaintiff to relief in equity, and to a new trial, upon the ground of newly discovered evidence. It is well settled that equity will enjoin a judgment at law when its enforcement is against conscience, and grant a new trial upon newly discovered evidence material to and conclusive upon the merits, which the aggrieved party could not have produced upon the trial at law by the exercise of proper diligence, or of which he could not avail himself by reason of some accident, mistake, or circumstance beyond his control.

Judge Story, in his work on Equity, vol. 2, section 894, states the rule on this subject as follows:

" Relief will be granted where the defense could not at the time, or under the circumstances, be made available at law, without any laches of the party. Thus, for instance, if a party should recover a judgment at law for a debt, and the defendant should afterwards find a receipt under the plaintiff's own hand for the very money in question, the defendant (where there was no laches on his part) would be relieved by a perpetual injunction in equity. So, if a fact material to the merits should be discovered after a trial, which could not, by ordinary diligence, have been ascertained before, the like relief would be granted."

Among the many authorities that might be cited to the same effect, see: Graham & Waterman on New Trials, vol. 3, 455; High on Injunctions, vol. 1, sec. 112 *et seq.; Cox v. Mobile & Girard R. Co.*, 44 Ala. 611; *Floyd v. Jayne*, 6 Johns. Ch. 479; *Carrington v. Holabird*, 17 Conn. 530; *Baltzell v. Randolph*, 9 Fla. 366.

The circumstances under which equity will interpose because of newly discovered evidence are summed up by Black, in his work on Judgments, vol. 1, sec. 386, as follows:

" (1) The evidence must have been discovered since the

trial. (2) It must be evidence that could not have been discovered before the trial by the plaintiff or defendant, as the case may be, by the exercise of reasonable diligence. (3) It must be material in its object, and such as ought, on another trial, to produce an opposite result on the merits. (4) It must not be merely cumulative, corroborative or collateral."

Are these conditions met by the facts found by the court below? The "Snider" monument, as it is termed, is found to be the true government corner as established by the original government survey, and in place as originally located. Plaintiff used reasonable diligence to discover it before the trial at law. Adopting it as the true north corner for sections 31 and 32, a line correctly run therefrom to the south township line between these sections places the caverns in question in section 31. If all these things be true, and we must assume they are, on this appeal, it would seem to admit of but little question that the appellant exercised the requisite diligence, or as to the sufficiency of the newly discovered evidence, if verified to the satisfaction of the jury, to produce a different and decisive result on another trial.

But it is said that if it be conceded that the newly discovered stone is properly authenticated, and admitted to be where it was originally placed by the government surveyor, it appearing that it was incorrectly placed, as shown by the field notes of the original survey, that it will be inequitable to give appellant an opportunity to utilize it, even if a true corner, by awarding him another trial.

Suffice it to say, the survey as made and marked upon the ground, whether incorrectly or not, fixed the boundary line between these sections, and it is not the province of the courts to correct government surveys of public land, or establish lines contrary to such surveys, however incorrect they may be.

As was said in *Cragin v. Powell*, 128 U. S. 691:

" Whether the official survey * * * is erroneous * * * is a question which was not within the province of the court

below, nor is it the province of this court to consider and determine. The mistakes and abuses which have crept into the official surveys of the public domain form a fruitful theme of complaint in the political branches of the government. The correction of these mistakes and abuses has not been delegated to the judiciary. * * * That the power to make and correct surveys of the public lands belongs to the political department of the government and that, whilst the lands are subject to the supervision of the general land office, the decisions of that bureau in all such cases, like that of other special tribunals upon matters within their exclusive jurisdiction, are unassailable by the courts, except by a direct proceeding; and that the latter have no concurrent or original power to make similar corrections, if not an elementary principle of our land law, is settled by such a mass of decisions of this court that its mere statement is sufficient. * * *

"The reason of this rule, as stated by Justice Catron in the case of *Haydel v. Dufresne*, is that ' great confusion and litigation would ensue if the judicial tribunals, state and federal, were permitted to interfere and overthrow the public surveys on no other ground than an opinion that they could have the work in the field better done and divisions more equitably made than the department of public lands could do.' 17 How. 30."

Lands are granted by the government according to the official survey, and by his patent from the government the appellant acquired title to the land conveyed thereby as described and designated by such survey, and the locus of his land is to be ascertained by reference to it and the original landmarks placed on the ground by the government surveyor. It is equitable that this should be done in this case.

It is undisputed that about June 1, 1881, appellant discovered the caverns in question and took immediate steps to preëmpt and acquire title to that portion of section 31 which, according to the government survey, as actually made, included them; and, whether correct or not, the location of the

E. ½ of the N. E. ¼, and the N. E. ¼ of the S. E. ¼ not only must, but in justice ought to be determined by such survey, and not by the survey upon which the lines were established at the last trial, based, as it was, upon the theory that the true corner was lost. The cases are numerous which sustain the proposition that monuments placed upon the ground by the government surveyor control, when a discrepancy exists between them and the courses and distances as given in the field notes, and I do not find any case in which it is held that the extent of the discrepancy changes this rule. Among them are the following: *The Mayor of Liberty v. Burns*, 114 Mo. 426; *Knight v. Elliott*, 57 Mo. 317; *Climer v. Wallace*, 28 Mo. 556; *Bruckner's Lessee v. Lawrence*, 1 Doug. (Mich.) 19; *Nesselrode v. Parish*, 59 Ia. 570; *Johnson v. Preston*, 9 Neb. 474; *Thompson v. Harris*, 58 N. W. Rep. 712; *Ogilvie v. Copeland*, 33 N. E. Rep. 1085; *Beardsley v. Crane*, 52 Minn. 537; *Hess v. Meyer*, 73 Mich. 259; *George v. Thomas*, 16 Tex. 74; *Pollard v. Shively*, 5 Colo. 309; *Cullacott v. C. G. & S. M. Co.*, 8 Colo. 179.

Why should the mistake of the government, in disposing of its land upon an incorrect survey, be invoked to destroy the title of a *bona fide* purchaser in actual possession? And why is not such a purchaser's claim to the land entitled to recognition and protection in equity, as well as at law?

It seems to me that the rule invoked by appellees, and announced by the chief justice, that the mistake of the government surveyor should be visited upon the unoffending head of appellant, is somewhat in the nature of a vicarious punishment.

The remaining proposition decisive of this appeal, it being the only one upon which my learned associates agree, is that the abortive attempt and failure of plaintiff to obtain a new trial under chapter 23, precludes him from invoking this equitable relief. It is to be inferred from the citations in support of this conclusion that it is predicated upon the well settled doctrine that equity will not interfere where there is a plain and adequate remedy at law, and that the statutory

right of a defeated party in an ejectment suit to avail himself of a new trial upon request therefor and the payment of the costs by the first day of the next term, affords an adequate legal remedy, and hence is exclusive, if available under the circumstances. · The unsoundness of this reasoning is apparent when we consider the reason upon which equity refuses its aid. It is because a way has been provided to obtain redress at law upon the *same grounds* that are relied on for its interference, and if such way has been neglected, or the relief has been denied at law upon a fair hearing, it refuses to act.

And I concede that if the plaintiff had an opportunity to apply for a new trial upon the ground of newly discovered evidence, under section 217, chapter 17, of the Code of Civil Procedure, and neglected to do so, he is precluded from seeking relief upon the *same ground* in a suit in equity ; but it is clear and undisputed that he had no such opportunity. When he discovered the corner in June, 1888, the time had passed in which he could present a motion for a new trial on the merits, and the only way he could thereafter obtain a new trial upon the ground of newly discovered evidence, was by the aid of equity. Relief upon this ground could not, in my judgment, be invoked under section 75 of the code.

It is unquestioned that a motion for a new trial upon the ground of newly discovered evidence may be made concurrently with an application to vacate the judgment, upon payment of costs, under chapter 23 ; and, if this be so, it seems to me that it logically and necessarily follows that a suit in equity will also lie for the same purpose concurrently with such application, if the time has elapsed for filing the motion when the evidence is discovered.

" The statutory remedy by motion, * * * is only available during the term at which the judgment is rendered, and in many cases a denial of the most obvious justice would result from holding this remedy exclusive. The assistance of equity cannot be invoked so long as the remedy by motion exists ; but when the time within which a motion may be

made has expired, and no laches or want of diligence is imputable to the party asking relief, there is nothing in reason or propriety preventing the interference of equity." *Bibend v. Kreutz*, 20 Cal. 110.

Counsel for appellees does not place much reliance upon the claim that the attempt to obtain a new trial by the payment of costs estops plaintiff from invoking equitable relief, but insists, rather, that the delay in bringing the suit constitutes laches that bar his right to the remedy, and the prosecution of his appeal from the judgment denying him a new trial, under chapter 23, did not excuse him from instituting this action while such appeal was pending. His contention upon this matter cannot be better expressed than in his own language. He says :

" It is said he had a right to prosecute this appeal. We do not question it; but was it a prerequisite to the institution of a suit in equity to avoid the judgment, the merits of which were not involved in the appeal? We think clearly not. Had the suit then been instituted, we submit it could not have been dismissed on the ground that the plaintiff had a plain, adequate and certain remedy at law by appeal. Surely the district court could not have so held without nullifying its own judgment denying the motion for a new trial. It is a fundamental rule that courts of equity are open to suitors in all cases when the remedy at law is not plain, certain and adequate."

It is apparent, therefore, that the learned counsel did not regard the application under the statute as exclusive, nor even a justification for delay in bringing the present action, and he presents what I regard as the only debatable question growing out of the pendency of that application, and that is whether the delay in bringing this suit, while it was pending in the court below and on appeal, constitutes laches that should bar the right to maintain it. Appellant brought this action immediately upon the decision of that appeal. The reason of this delay is apparent from the history of the law action as set forth in the complaint. When the second trial

resulted in an unfavorable verdict and judgment, he attempted to obtain a new trial under the statute. He relied upon a procedure which the court below finds to have been the generally understood practice in the *nisi prius* courts, and paid the costs, but took no further steps in apt time to have the judgment vacated. At the time appellees took advantage of his default in this regard several terms of court had elapsed; yet, believing it necessary to prosecute an appeal from the judgment, striking the case from the docket and refusing him a new trial, before instituting his suit in equity, he pursued that course.

While he may not avail himself of this mistake of law to escape the effect of that judgment, it may be taken into consideration as rebutting any intentional or willful delay in seeking his equitable remedy; and although it is true that immediately on discovering the new evidence, or upon the rendition of that judgment, he might have instituted his present action, his failure to do so under the circumstances I do not think in itself constitutes such laches as should bar him from the present remedy, if upon other grounds he is entitled thereto. As was said in this court, in the case of *Warren v. Adams, supra:* "Length of time alone is not sufficient to justify the court in refusing equitable relief. The circumstances under which the delay occurred, together with the lapse of time, must be such as to impute negligence to the party who seeks relief."

Not only lapse of time, but other circumstances, must usually intervene to successfully invoke the doctrine of laches. Every case is governed by its own circumstances, and whether delay is sufficient to effectually bar the remedy is to be resolved in the light of those circumstances. In the case of *Dunne v. Stotesbury,* 16 Colo. 89, Justice Elliott, speaking for the court, said:

"When there has been unreasonable delay in bringing suit, courts of equity sometimes refuse relief, even though the statutory period of limitations has not expired; but this is generally in cases where acquiescence amounts to a tacit rec-

ognition of the rights of the party in possession, and where the assertion of adverse rights is regarded as not only inconsistent, but unconscionable, or where other equitable considerations equally strong are established."

In this case the property in question has remained in *statu quo.* The proceeds derived from the undivided interest that appellees claim in the caverns have been preserved by the appointment of a receiver. The appellant has not slept upon his rights, but has persistently and continually attempted to obtain relief from the judgment.

Nor can the appellees be prejudiced by loss of witnesses by death or removal from the jurisdiction of the court, since their evidence taken upon the former trials is preserved in the record, and may be resorted to upon another trial. *Rico R. & M. Co. v. Musgrave, supra.* None of these equitable considerations have intervened, and I can see no reason why the delay in instituting this suit should deprive appellant of relief from a judgment manifestly inequitable, a delay attributed solely to mistake in regard to an unsettled practice, and one that might easily have been avoided by appellees had they seen fit to waive a technical default and submit to a trial upon the merits.

I am clearly of the opinion that the court below erred in dismissing the complaint, and in not granting a new trial, upon the ground of newly discovered evidence, although correct in its conclusions that the facts were insufficient to overthrow the judgment on the ground of fraud, and that the judgment should be reversed.