## [No. 3767.]

### WARREN ET AL. v. ADAMS ET AL.

1. BILLS OF REVIEW—BASIS OF—NEW MATTER.

The law relative to bills of review is based upon Lord Bacon's ordinance, which provides: "No decree shall be reversed, altered or explained, being once under the great seal, but upon bill of review, and no bill of review shall be admitted except it contain * * * some new matter which hath arisen in time after the decree, and not any new proof which might have been used when the decree was made. Nevertheless, upon new matter that has come to light after decree made, and could not possibly have been used at the time when the decree passed, a bill of review may be granted by the special license of the court, and not otherwise."

2. PRACTICE—BILLS OF REVIEW—NEW EVIDENCE—DILIGENCE.

In order that new evidence may be made available as a basis for a bill of review, it must appear that it was not known to the party pleading it, or his counsel, in time to have been brought forward and used in the former trial, and that it could not have been discovered or produced in that suit by the exercise of reasonable diligence.

3. SAME.

In a bill of review of a decree on the ground of newly discovered evidence, lack of effort to produce the witness at the trial will not be excused because the petitioners were led by allegations in the pleadings of their adversary to believe that his evidence would be favorable to their adversary and against their interest, and that said witness would be produced by their adversary.

4. SAME.

The diligence used to procure new evidence relied upon as a basis of a bill of review must be the diligence of the parties seeking the review, and not the diligence of their adversaries. However diligent the adverse party may have been to produce the witness, it will not excuse the lack of effort on the part of those seeking to avoid a decree.

5. SAME—PLEADING.

In a bill of review on the ground of newly discovered evidence, diligence to procure such evidence at the trial is an essential element and must be alleged by apt averments.

*Appeal from the District Court of Arapahoe County.*

IN December, 1890, appellee Adams instituted an action against appellants for the purpose of establishing that certain land, the title to which had descended to them from John W. Iliff, deceased, was held by them in trust for his benefit. A trial of this action resulted in a judgment in favor of appellee, from which appellants appealed to this court, where the judgment was affirmed. *Warren v. Adams,* 19 Colo. 515. Thereafter, appellants brought an action, by a bill of review, by which it was sought to vacate the former judgment in *Warren v. Adams, supra,* which bill was founded upon the claim of newly discovered evidence of facts, which, it is claimed, if established, would result in vacating the decree rendered in the previous case. To this bill appellees interposed a general demurrer, which was overruled. On the issue of fact formulated by the bill, and answer thereto, a trial was had, with the result that the bill was dismissed, from which judgment plaintiffs have appealed to this court, assigning as errors, as we understand the argument, that the judgment rendered is against the law and the evidence, and that the court erred in dismissing the bill. Appellees insist that appellants are not entitled to a review of nor is it necessary to examine the record of the evidence in the case, because the bill is wholly insufficient upon its face, and the demurrer should have been sustained.

Mr. THOMAS MACON and Mr. DANIEL PRESCOTT, for appellants.

Mr. THOMAS B. STUART, Mr. CHARLES A. MURRAY and Mr. J. C. HELM, for appellees.

MR. JUSTICE GABBERT delivered the opinion of the court.

In the former opinion filed in the case, we held that the bill was sufficient as against the general demurrer, except on the question of the diligence exercised by appellants in en-

deavoring to secure the newly discovered evidence of facts at the former trial of *Warren v. Adams*, *supra*, upon which they now rely for a reversal of the decree rendered in that cause. On that point no opinion was expressed, as, in our judgment at that time, it was unnecessary to pass upon this question, but upon petition for rehearing, it was made apparent that it should be determined, and a rehearing was granted, the arguments to be limited to the one subject of the sufficiency of the bill in this respect.

Appellee Adams, in his original action, based his right to the land in question upon the ground that the consideration therefor was paid by him, and the title taken in the name of John W. Iliff as a matter of convenience. For answer appellants averred that such title was accepted by Iliff in satisfaction of large sums of money due him from Adams.

For new matter in the bill upon which plaintiffs base their right to a review of the original decree, they state, in effect, that in the month of December, 1866, Adams was possessed of a large number of cattle ranging near the city of Denver, which he was desirous of selling, and proposed that one Eastman purchase part of them; that the latter declined, but offered to trade this land for the cattle; that Adams at first refused, but stated a few days later that he would do so, at a stated price, provided Iliff would take the land at the same figure, by applying the price on indebtedness which he, Adams, was then owing Iliff; that after an examination of the land by the parties interested, Adams informed Eastman that Iliff had agreed to take the land at the price mentioned, and directed him to execute a conveyance to the latter, which he subsequently did, having in the mean while received from Adams cattle of the value placed upon the land. Other details regarding the transaction are also stated, which it is not necessary to state, the sum and substance of the new matter on this subject being, that Iliff paid the consideration for the land, as originally claimed by the appellants, and took title for himself, and not as trustee for Adams. These facts, they aver, can be proved by Eastman

and other witnesses named, but the main witness upon whom they rely to establish the new facts is Eastman.

The issue between the parties tendered by the original complaint, as, also, by the bill, was whether or not the title to the land was taken by Iliff in trust for Adams.

The averments of the bill on the subject of diligence, so far as they relate to that exercised by appellants, to procure the evidence of Eastman at the first trial, are to the effect that after the institution of the original action, they set on foot inquiries relative to his whereabouts, but because Adams had given out that he knew where he was, they were led to believe that the two were acting in concert; that Eastman would be under the influence of Adams, and be produced by him at the trial, and testify favorably to Adams; and that, therefore, they failed to make such search and inquiry for Eastman as they otherwise would.

The law relative to bills of review is based upon Lord Bacon's Ordinance, which provided: "No decree shall be reversed, altered or explained, being once under the great seal, but upon bill of review, and no bill of review shall be admitted except it contain * * * some new matter which hath arisen in time after the decree, and not any new proof which might have been used when the decree was made. Nevertheless, upon new matter that has come to light after decree made, and could not possibly have been used at the time when the decree passed, a bill of review may be granted by the special license of the court, and not otherwise."

On the question of diligence, the rule is, that in order that new matter may be made available as a basis for a bill of review, it must appear that it was not known to the party pleading it, or his counsel, in time to have been brought forward and used in the former trial, and that by the exercise of reasonable diligence, it could not have been discovered or produced in that suit. *Snyder v. Rinehart*, 20 Colo. 448; *Bibond v. Kreutz*, 20 Cal. 110; 3 Ency. Pl. & Pr. 580, *et seq.*; *Adler v. Van Kirk L. & C. Co.*, 114 Ala. 551; *Massie v. Graham*, 3 McClain (U. S. C. C.), 41.

The averments of the bill above noticed were controverted. by the answer, and no proof was offered in support of them. But independent of this, they are wholly insufficient to satisfy the rule regarding diligence, because they are not allegations that any was exercised.

The only remaining question is, whether or not those just noticed, or other averments in the bill, are sufficient to excuse appellants from not having taken more active steps than they did, to secure the evidence of Eastman, or his attendance as a witness at the first trial, for no claim is made by their counsel that any showing of diligence upon their part is alleged, except as contained in the averments of the bill above mentioned.  In the bill it is also averred that Eastman departed from the state of Colorado about the year 1884, and for nine years or thereabouts, next prior to the trial of the issues in the original action, resided continuously beyond the limits of this state, sometimes in the territory of Idaho, and at other times in the states of  Oregon, California, Texas and Missouri, and that during all that time he was not in correspondence or communication with any person in this state, and that no person within the limits of the state knew of his whereabouts.  It also appears from the bill and record that at the time of the transfer to Iliff of the property in controversy, the plaintiff, Mrs. Warren, was not the wife of, or acquainted with, the deceased; that his son, since deceased, was then an infant, and plaintiff, W. S. Iliff, an infant of tender years, and that the other plaintiffs were born subsequent to the transaction.  That the deceased always claimed to be the owner of the premises in his own right, and that plaintiffs never had any knowledge that a claim to the contrary existed until about the time the original action was brought.

It also appears from the complaint filed by appellee Adams, in the original cause, the substance of which is incorporated in the bill, that he claimed to have forgotten the transaction upon which he bases his right to the land in question, until it was recalled to his mind by Eastman, in an in-

terview at Albuquerque, New Mexico, in 1886. Adams testified at the first trial, as appears from the bill, that at the time he had no knowledge of the whereabouts of Eastman; that prior thereto he had written to almost every postmaster in Colorado, New Mexico and Arizona, and had gone to the police department and offered a reward to any one who would find him. It also appears from the bill, that appellants had no personal knowledge regarding the interview between Adams and Eastman at Albuquerque, until informed by the latter, which information was received in January preceding the date of the filing of the bill, and that they learned from him the names of the other witnesses mentioned in the bill, and what these witnesses will testify to.

In the answer to the bill of review, the appellees aver that Adams, subsequent to the commencement of the original action, and during its pendency, made diligent search for Eastman, intending to produce him as a witness, but failed to discover any clew to his whereabouts.

Appellants had no connection with the original transaction, which resulted in the transfer of the land in controversy from Eastman to John W. Iliff. Who was present, and what occurred, at that time, was a matter regarding which they could obtain no information, except upon inquiry. According to their answer in the original case, they were advised of its nature, and the circumstances under which title was vested in Iliff, which exactly accords with the facts they propose to establish by the evidence of Eastman. They were informed by the complaint filed by Adams in the original cause, that Eastman was necessarily more or less familiar with the details of the transaction, so that it is evident that they must have known at the time of the first trial, and long prior, that Eastman was an important witness. True, according to the averments of the original complaint, Adams claimed that his memory regarding the transaction had been refreshed by statements of Eastman, which, if true, would contradict the fact upon which appellants relied as a defense to the original cause; but that Adams made the statement he did in his

complaint, regarding what Eastman had told him, would not excuse them from endeavoring to ascertain from Eastman what he may have known or recollected about the transaction. The conveyance through which the deceased obtained title to the subject-matter of the controversy was from him. That Adams claimed that Eastman had made a statement to him which, according to the theory of appellants, was untrue, would not excuse them from taking active steps to ascertain what Eastman did, in fact, know, nor could they implicitly assume that because Adams stated in his complaint what he claims Eastman told him at Albuquerque, that he would secure his evidence, or produce him at the trial, of the original cause, for it is negligence for a party to an action to depend upon his adversary to produce evidence. *Burnley v. Rice*, 21 Texas, 171 ; 3 Graham & Waterman's New Trials, 939.

Nor would the fact that Adams himself had been particularly active in endeavoring to locate Eastman, excuse them from endeavoring to ascertain his whereabouts. The diligence upon which they must depend is that exercised by themselves or at their instance, and not by some one else. Neither is the fact that Eastman was unsettled in his abode for a long period preceding the trial of the former cause any excuse why they should not have made a reasonable effort to locate him ; because, in all questions of diligence of this character, the fact whether diligence has been exercised or not, must depend upon what efforts were made, and not upon those which were not ; or, in other words, the court cannot say that the exercise of reasonable diligence by appellants in endeavoring to ascertain the whereabouts of Eastman would have been unavailing, unless it appears to be the fact after diligent efforts had been made by them for that purpose.

A proceeding by bill of review is an extraordinary remedy, and should not be resorted to except in cases which clearly fall within the rules governing proceedings of this character. When based upon newly discovered evidence of facts, it must appear that such evidence could not have been known by the parties presenting it by the use of reasonable diligence upon

their part, in time to have been used at the former trial. It is the essential element, and of the very essence of the equity of the bill. That such diligence must appear by apt averments in the bill itself is settled by innumerable authorities, as it is one of the requirements recognized by the fundamental law on the subject of bills of review, and unless it so appears the bill is fatally defective. *Young v. Keiyhly*, 10 Vesey, 347; Hilliard on New Trials, 496; Daniell's Ch. Pr. (5th Am. ed.) 1578.

It is clear that the bill in this case is wanting in this respect. No diligence was exercised to ascertain what Eastman knew regarding the transaction, or to secure his evidence at the first trial. From him the names of the other witnesses mentioned in the bill, and their knowledge of material facts was learned. Neither does the bill state facts which excuse them from making reasonably diligent efforts to learn what Eastman knew, or to secure his attendance at the former trial.

This conclusion renders it unnecessary to pass upon the other questions raised by appellees, and as the bill fails to state a cause of action, it was properly dismissed, even though the trial court erred in the first instance in overruling the general demurrer, and may have assigned wrong reasons for the judgment of dismissal. The former opinion is withdrawn, and the judgment of the district court affirmed.

*Affirmed.*