RICO REDUCTION & MINING CO. v. MUSGRAVE ET AL.

1. CONSTRUCTION OF MINER'S LIEN STATUTE.— The legislation of this state upon the subject of mechanics' and miners' liens should receive a liberal construction.

2. SAME — ADMISSIBILITY OF STATEMENT IN EVIDENCE.— A statement upon which a miner's lien is sought to be based, which clearly expresses an intention to hold and claim a lien, and contains a description of the property complete on its face, and shows the sum total in dollars and cents which the claimant's work amounts to, and states that the same is due, and that no portion of it has been paid, is admissible in evidence against an objection challenging its sufficiency.

3. WHEN STATEMENT FOR LIEN INCLUDES SEVERAL MINING CLAIMS, HOW NECESSARY FACTS MAY BE ESTABLISHED.— A statement filed in the recorder's office against several mining claims need not state that said claims are owned, claimed or worked by the same person or persons, so as to be deemed one mine, for the purposes of the miner's lien statute; it is sufficient if such matters are established by proper averment and proof, or by proof alone, when the defect in the pleadings is waived by answering over.

4. A CONTRACT WITH OWNER OR AGENT OF PROPERTY ESSENTIAL TO A LIEN — BURDEN OF PROOF.— To entitle a party to such lien there must be a contract, express or implied, with the owner of the property on which the lien is claimed. The burden of proving such contract rests on the party asserting it, and he must ascertain for himself whether the person with whom he contracts is the owner, or has an interest in the land on which he expects to claim a lien. It is sufficient if the contract be with an authorized agent of the owner.

5. CONSENT OF CO-TENANTS NECESSARY TO IMPROVEMENT OF THE JOINT PROPERTY AT EXPENSE OF ALL.— The law does not invest one tenant in common with authority to improve or develop real property at the expense of his co-tenants, without their authority or consent.

6. PRACTICE IN SUPREME COURT IN CASES IN WHICH ERROR OCCURRED IN THE TRIAL BELOW.— It is not the usual practice of this court to substitute its own findings in the place of the findings of the trial court upon matters of fact based upon conflicting evidence given orally in open court; but, where the conclusions of law are erroneous, the general rule is to reverse the judgment, and remand the cause for a new trial.

7. WHEN EVIDENCE TAKEN AT FORMER TRIAL MAY BE USED ON RE-TRIAL.— On a retrial, where there has been a loss of witnesses by death or removal from the jurisdiction of the court, evidence taken at the former trial and preserved by bill of exceptions, or otherwise correctly preserved, may be resorted to.

*Appeal from District Court of Dolores County.*

Messrs. RUSSELL & MCCLOSKEY, for appellant.

Messrs. JULIUS THOMPSON and PENCE & PENCE, for appellees.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

The appellant, the Rico Reduction & Mining Company, was defendant below in proceedings instituted to enforce sundry liens upon certain mining property on account of work and labor performed thereon by appellees, who recovered judgment, sustaining their respective claims as liens against the property of appellant. The statements filed in the office of the recorder, upon which the several liens of appellees were based, respectively, were as follows, differing as to name of claimant, dates and amounts, but not as to substantial requisites:

"The Rico Reduction & Mining Company, Harry Cahn and L. Silverman: You are hereby notified that I claim and hold a lien upon the Little Suse, Little Wonder and Russian Bear lodes and mining claims, situated adjoining each other on the north side of, and about one-half mile from, West Dolores river, in Dolores county, state of Colorado; location certificate of the first of said claims being recorded in book 21, page 97; location certificate of second of said lodes being recorded in book 21, page 97; and location certificate of third of said claims being recorded in book 21, page 79, of records of Dolores county, to which reference in each case is here made for a more particular description, and that such lien is claimed for and on account of one hundred and twenty-one days' work performed by me, as a miner upon said properties, between the 7th day of January, 1884, and the 31st day of May, 1884, for which labor you agreed to pay me at the rate of $2.50 per day, amounting to the sum total of $302.50, which you agreed to pay me as soon as said work was done, but no portion of which has as

yet been paid." Objections to the sufficiency of these statements at the trial were overruled by the court, and these rulings are assigned for error.

It is contended that the statements are defective in the description of the property, and in the abstract of indebtedness. In a recent and well-considered opinion by this court, *Cannon v. Williams, ante,* p. 21, it is declared that our legislation upon the subject of mechanics' and miners' liens should receive a liberal construction. The same doctrine was announced in *Barnard v. McKenzie,* 4 Colo. 251, in relation to the law of 1872. Section 27 of the act of 1883 (Gen. St. ch. 65), referring to the statement by which the lien may be claimed, provides that "any informality in any such statement that shall not tend to mislead shall not affect the validity thereof." Viewing this provision of the statute in the light of the opinions above cited, it is apparent that neither of the foregoing objections is well taken. On the face of the several statements, the description of the property appears to be complete. The "notice of intention to claim and hold a lien" is clear. The "whole amount of debt" is shown in the "sum total" of dollars and cents which the claimant's work amounted to. The "whole amount of credit" is shown to be *nothing* by the positive assertion that "no portion" of the amount earned "has yet been paid." It is plainly asserted that the amount earned was *agreed* to be paid "as soon as said work was done;" hence, it is evident that the "balance due" is exactly the same as the "whole amount of debt," and the sum need not be repeated. Thus the requirements of the statute are substantially complied with.

The further objection is urged that the statements do not show how many days the claimants worked on each lode, nor the amount due therefor, nor that said lodes and mining claims were owned, claimed or worked by the same person or persons, so as to be deemed one mine for the purposes of the mechanics' and miners' lien stat-

ute.  In our opinion, these matters need not be set forth
in the statement more fully than they are.  It is suffi-
cient if they are established by proper averment and
proof, or by proof alone, when the defect in the plead-
ing is waived by answering over, as in this case.

It is further assigned for error that the judgment is
contrary to the findings of the court, and the law appli-
cable thereto.  An intelligent consideration of this ques-
tion necessitates a further statement of the matters at
issue in this litigation, and a better understanding of the
interest of the parties in the property in controversy.
These proceedings were originally commenced against
the Rico Reduction and Mining Company, a corporation,
Harry Cahn and L. Silverman, as joint defendants; it
being alleged that said company was the owner of an
undivided half interest in all of said property.  Each
plaintiff based his claim for a lien upon work performed
under an alleged verbal agreement with the Rico Com-
pany, entered into through one Phil Crout, as the agent
of the company, duly authorized to employ laborers on
the property in its behalf.  The Rico Company, by its
answer, admitted its ownership of the undivided half of
the property, but denied the making of any agreement
for the employment of plaintiffs, or either of them,
through the agency of Crout, or otherwise.  It was fur-
ther alleged in the answer, on information and belief,
that Crout was the owner of the other half interest in
said mining property, and that whatever work may have
been done by plaintiffs on said property, as alleged in
the complaint, was so done for and on behalf of said
Crout, and for and on behalf of his own interest in the
property, and without the knowledge or consent of the
Rico Company.  The proceedings as against Cahn and
Silverman were voluntarily dismissed by plaintiffs before
the trial in the district court, and upon the trial the find-
ings of the court were, *inter alia*, in substance as follows:
That the defendant the Rico Company was the legal and

equitable owner of an undivided one-half interest, and that Phil Crout and Joseph Hoskins were the equitable owners of the other undivided half interest in said mining lodes; that no contract was entered into between the defendant company and Phil Crout, authorizing said Crout to act as the agent of said company, and to bind said company for the contracts made by said Crout with plaintiffs, and that said company did not ratify the contracts of said Crout with said plaintiffs; that defendant company had actual knowledge of the working and development of the said lodes by the plaintiffs, and received one-half the benefit and advantage of the labor bestowed by plaintiffs on the same.

To entitle a party to a mechanic's or miner's lien the work must be done or the material furnished by contract, express or implied, *with the owner* of the property on which the lien is claimed. The burden of proving such contract rests on the party asserting it, and he must ascertain for himself whether the person with whom he contracts is the owner or has an interest in the land on which he expects to claim a lien for the improvement contributed to by his work or material. It is sufficient if the contract be with an authorized agent of the owner; and, if the contract be with one of several co-tenants, undertaking for himself alone, the lien may be enforced for the whole value of the improvement against the moiety of such contracting party. *Mellor v. Valentine,* 3 Colo. 255; *Williams v. Canal Co.* 13 Colo. 469.

In Phillips on Mechanics' Liens (section 77) it is said: "No man has a right to improve the property of another against his consent, and charge him with the expenses. Perhaps a joint owner may repair and preserve property at the expense of all the owners, and without their consent, especially if such consent is unreasonably withheld. But this is all that he can do. He cannot improve the property. * * * One joint tenant, however, may create a lien in favor of a mechanic on his own interest in

land. So, although the contract is to be made with the 'owner,' yet, if but one of several persons who purchase materials for building owns the land, the lien will be good against his interest." Freem. Co-ten. §§ 261, 262; *Mumford v. Brown*, 6 Cow. 475.

From the findings of the court it appears that Crout was one of several owners of the property upon which plaintiffs were employed, and against which they seek to establish their several liens. They claim to have made their contracts of employment with the company by verbal agreement, through Crout, as the company's agent. The court finds that he had no authority as such agent, and that the company did not ratify his contracts with plaintiffs. It is true the court finds that the company had actual knowledge of the working and development of the property by plaintiffs, and that it received one-half the benefit of their labor; but the findings do not state when the company acquired such knowledge, nor do they indicate that at any time the company had knowledge that Crout had assumed to employ plaintiffs for or in its behalf. As we have seen, the law does not invest one tenant in common with authority to improve or develop real property at the expense of his co-tenants, without their authority or consent. Hence, it was error for the court, upon such findings, to render judgment sustaining plaintiffs' liens against the interest of the Rico Company in the mining property.

It is contended by counsel for appellees that the evidence is sufficient to warrant this court in finding that Crout did have authority from the Rico Company to employ plaintiffs in its behalf for the development of the mine, and that they were so employed. If the trial court had made such findings as a basis for its decree, perhaps a judgment of affirmance might be rendered. But we cannot disregard the fact that the findings are otherwise, and that they are based upon conflicting evidence, most of which was given orally in open court. Under such

circumstances, the usual practice of this court, where the conclusions of law are erroneous, is to reverse the judgment and remand the cause for a new trial; and it is accordingly so ordered.

*Reversed.*

### ON PETITION FOR REHEARING.

PER CURIAM. The only matter suggested in the application for a rehearing is that we shall direct a money judgment in favor of appellees, on the ground that on a retrial of this case there may be a failure of justice, occasioned by the lapse of time and the loss of witnesses by death or removal from the jurisdiction of the court. In case of such difficulty, it is well settled that the evidence taken at the former trial, and preserved by bill of exceptions, or otherwise, may be resorted to, in connection with any additional evidence; and thus a trial *de novo* upon the whole case, with new findings of fact, may be had. This may be quite advantageous to appellees, for the findings of fact on the former trial would not sustain a personal judgment against the Rico Company any better than they sustain the lien. With this explanation, the rehearing asked for will be denied.

*Rehearing denied.*