[No. 1848.]

## GRIFFIN v. SEYMOUR ET AL.

1. MECHANICS' LIENS—CONTRACTS—OWNERS.

In order to support a mechanic's lien under a contract, the contract must be made with the owner of the property sought to be subjected to the lien.

2. SAME—POSSESSION—PLEADING.

Where a complaint in an action to foreclose a mechanic's lien shows on its face that parties with whom the contract of employment under which the lien is claimed was made were not the owners of the property the complaint is insufficient to state a cause of action. And the allegation that the parties with whom the contract was made were lawfully in possession of the property would not cure the defect since no presumption of ownership can be indulged from the fact of possession against the positive allegation of the complaint that the ownership was in another person.

3. MECHANICS' LIENS—OWNERSHIP—GRANTOR'S LIEN.

A grantor's lien, or the right of a grantor to pursue the property for the purchase money is not such interest in or ownership of the property as will support a mechanic's lien.

4. MECHANICS' LIENS—CONTRACTS—AMENDMENT OF LAW.

Where a party contracted to do certain services in relation to real estate which under the law as it existed at the date of the contract would not entitle him to a mechanic's lien, the fact that he continued his services under the contract until after the law was amended giving a mechanic's lien for the character of service he was performing, would not entitle him to a lien. And the fact that the contract was terminable at the option of the parties would not warrant the construction that it was a new contract made from month to month.

5. MECHANICS' LIENS—OWNERSHIP—AFTER ACQUIRED TITLE.

Where a party claims a mechanic's lien under a contract made with persons who were not the owners nor had any interest in the real estate that would support the lien, the fact that the persons with whom he contracted afterwards acquired ownership would not entitle him to a lien under his contract.

*Appeal from the District Court of Boulder County.*

Mr. T. E. WATTERS and Mr. C. M. KENDALL, for appellant.

Messrs. TELLER & ORAHOOD, for appellees.

BISSELL, P. J.

This appeal. is prosecuted from a judgment sustaining a demurrer to a complaint filed to establish an alleged mechanic's lien. Our conclusions respecting one or two propositions serve to affirm the judgment and we therefore state generally a few of the material allegations of the complaint.

In January 1889, three persons, Seymour, Sanderson and Pell, as the plaintiff alleged, employed him as a custodian to care for and preserve the mining property described and to do such work as might be necessary for a fixed compensation, to wit, $125 per month. The engagement was for no specific period, but was to continue so long as the arrangement should be satisfactory and as the parties might agree. The plaintiff thereunder took possession of the property as custodian to care for and preserve it, but under no agreement to do any work, nor did he do any work under the contract. This is an inevitable inference from the language of the pleading because it is only averred he was to do such work as was necessary and the plaintiff did not aver that he did any, except that he states he did all he was required to do, which is not an allegation of performance of work. The plaintiff then proceeds to state that on the date of the contract, Seymour, Sanderson and Pell were lawfully in possession of the property, holding thereon a grantor's lien for a large amount of money. He states the legal title was in the Slide and Spur Gold Mines (Limited), a corporation of Great Britain. Further that the grantor's lien claim was held in the name of Seymour and Pell, but that Sanderson owned a half of it. But one further fact need be stated. The plaintiff set up generally that subsequently a bill in equity was filed to foreclose the grantor's lien, and the complainants obtained a decree; that there was a sale of the property which was bid in by Teller, as trustee for the complainants, and Sanderson. There was a subsequent conveyance of the property, but whether absolute or as security plaintiff was unadvised. After setting up all the other matters requisite

to support a lien if a lien could be sustained in his favor, he prays judgment.

This sufficiently exhibits the controversy. The statutes giving liens to mechanics and others have been the subject of much amendment, and almost every case that comes up is in reality determined by a consideration of the time at which the lien was filed. The act of 1883 remained in force for six years. It was amended in 1889 and then again in 1891 and still again in 1893. The appellant's rights however are to be measured and controlled as we look at it by the terms of the act of 1883, because this statute was in force when the contract was made on which the appellant's rights necessarily rest. We do not believe that the subsequent changes in the statute at all vary or alter this conclusion, nor that there is anything in the amendment or in the terms of the new act which enlarge or modify or control the determination of the lien claim which the plaintiff asserts. According to the act of 1883 whoever made a contract with the owner to do work on property might have a lien. We only speak generally without attempting to assert the kind of work or determine the class of persons to whom the statute was applicable because these considerations are wholly foreign to our present inquiry. We start out with the premise that the contract must be made with the owner. This is enough to defeat the appellant's claim to a lien. As will be observed by a consideration of the allegations of the complaint, Seymour, Pell and Sanderson were not the owners when they made the contract with Griffin. The complaint avers that the title was in the Slide and Spur Gold Mines (Limited) of Great Britain. This must be taken as true against the plaintiff and he therefore states that the parties who hired him were not owners. We see no force in the suggestion that this matter is aided by the averment that they were lawfully in possession. The appellant's counsel has built up quite an argument to the proposition that the possession is a *quasi* title and the law presumes some sort of a title in parties who are in possession. The trouble with the argument is there

is no room for legal presumptions in the face of the direct averments of the pleading. If there had been no statement that the legal title was in the corporation, but the plaintiff had been satisfied with alleging that these three persons, Seymour, Pell and Sanderson were lawfully in possession and made a contract, we might in the consideration of the demurrer have followed counsel to the conclusion that the law would presume a title sufficient to uphold a lien. When he goes on and avers that the title was in some one else, there is no presumption that there is any title resulting from the possession. We therefore dismiss the consideration of the matter of possession and this leaves only the inquiry whether Seymour, Pell and Sanderson could in any sense be called owners. They were without any sort of title to the property. As the plaintiff puts it, the only thing they had was a grantor's lien. The profession will understand that a grantor's lien is nothing but an equitable right to follow the property in the hands of the grantee and subject the title which the grantee got by the conveyance to the payment of the consideration money or purchase price; in other words, to protect the grantor who has parted with his title and has not received the purchase price. It never was, nor is, in any definite or actual sense a lien which can ordinarily only exist as the result of some contract between the parties or because-of some statutory provision which gives this sort of a right under specific conditions. The term is accurate enough to describe the right which the grantor has to pursue the property, but it would not appear to be wholly and technically accurate according to the legal definition of the term lien. This is unimportant, but as we look at it, the fallacy of the argument for the appellant proceeds from the theory which he attempts to enforce that this grantor's lien is an interest in the property. Because the grantor has in equity a lien for some purposes and under certain conditions he fallaciously concludes that that lien is necessarily an interest in the property. The importance of the argument comes from the circumstance that there is in the law a provi-

sion that the word owner includes any person having a transferable or conveyable interest in a claim. Being partially right in his assumption, he supports his position by the contention that the vendor's lien is an interest in or a claim to the property. We start out with the theory that there must be a contract with the owner. It is on the plaintiff to allege it and to prove it. The work must be done and the material furnished by contract with the owner and the claimant must ascertain for himself whether the other party to the contract has or has not an interest in the land. This has been clearly decided by our supreme court in *Rico Reduction & M. Co. v. Musgrave et al.*, 14 Colo. 79. This decision shows the necessity for the appellant to carry his logical process to the result that Seymour, Pell and Sanderson, having a grantor's lien were, by virtue of the necessary construction of the statute therefore owners. If they were not owners he made a contract with persons who were incompetent to enter into a contract which would make the sum due them a lien on the property. He has, therefore, as we have already suggested, attempted to argue that the grantor's lien under the phraseology of the act is of such a nature as to make the holder of it an owner in the property. We do not so understand. In the first place this is not the necessary nor the legitimate construction of the language of the act. The party through whose contract the claimant derives his right to file a lien must have an interest in the land or a claim to the land, such is the statutory language. The grantor's lien is certainly not a claim to the land nor an interest in it, nor has it ever been so held. It has been directly decided otherwise by the supreme court. *Fallon v. Worthington*, 13 Colo. 559. That was a well considered case and is a lucid and accurate statement of the law by Commissioner Pattison. Therein it was held that such a lien was but a chose in action. It excludes any idea of ownership. It was further held that this lien, whether it arose from a contract or was implied by the law from equitable considerations and circumstances conferred no right to the property on the holder. As it was

said, quoting from another case, " it is neither *jus ad rem* nor *jus in re*." This being true, and this being its definition, it cannot be legitimately contended the grantor's lien was an interest in or a claim to the property. It was simply a naked, equitable right which might be enforced in equity and reinvest the grantor with the title which had passed. We therefore conclude there is nothing in the statute from which it may be adjudged the plaintiffs were owners and that no legitimate deduction can be drawn therefrom that these persons who were holders of a grantor's lien had any interest as owners in the property.

The appellant insists that the claim is assignable and that because it is assignable and the statute says that wherever any person has any interest in or claim to property which is assignable, Seymour, Pell and Sanderson had an interest which could be made the subject of a lien. It may be very gravely doubted whether such a claim is assignable. Counsel say that such is the trend of modern authority. We can only respond that such is not the current of it and probably not the weight of it. What our supreme court might conclude we do not know and therefore we do not decide the question. It is debatable. 3 Pomeroy on Equity Jurisdiction, § 1254.

We are not ready to concede that because the supreme court has said that descendibility and assignability go hand in hand, it follows even though we should hold a grantor's lien would descend to the heir, that it is therefore assignable. This general principle is not asserted by the supreme court and what conclusion they might reach about it we do not know. It is enough to say that the fallacy of the argument proceeds from the circumstance that Griffin's claim whether assignable or descendible is in no sense an interest in or a claim to the property. This wholly destroys the argument that because the vendor's lien is assignable and descends, therefore it is property on which the plaintiff had a right to file a lien. We do not believe that the work for which Griffin contracted was work for which a lien could be filed by the terms of the statute. He was simply a custodian to see that

the property was not destroyed; a person directed as he says, to preserve it. It might admit of a good deal of argument, whether taken in its broadest sense this would be work within the lien statute even under the amended act. Mining property is not preserved by being watched. It is quite impossible to pick up mining property and run off with it. It might be that the contract for preservation or guarding included the doing of those things which would bring the case within this language, but it is exceedingly doubtful at best whether a custodian alone could ever acquire a lien on mining property. It might be very essential to have a custodian look after the improvements and machinery and while he might possibly have a lien thereon it admits of debate at least whether such a contract would give him a lien on the realty. At any rate the question is so doubtful we do not desire anything said in this opinion to be regarded as an expression of our conclusion on this subject. It is enough for the purposes of this decision to say that such work was not provided for by the act of 1883. We cannot follow counsel to his logical conclusion that because the act was amended in 1889 and a lien given for work done in the preservation of mining property, therefore Griffin might have a lien for the work done after the enactment of that statute. One very good answer to the contention is that we must look to the contract to determine his rights. When he contracted he acquired no such right. There is nothing in the complaint to show that there was any change in the employment or any modification in the terms of it, but he continued from that time on as he claims to work thereunder until 1895. In order to determine whether or not he was entitled to a lien we should go back to his contract and if by its terms he acquired no right, we cannot hold that because he continued in the service he acquired any right under the provisions of the act as amended. The argument that because it was terminable at the option of the parties, the law is to take it as a new contract made from month to month seems to us an unwarranted contention. We know of no legal principle which justifies any such conclusion. If

the parties had terminated or modified it and agreed to anything respecting the appointment there might be some basis for the contention. Nothing, however, was said or done from the time of the original hiring until the lien was filed. We must, therefore, assume the contract as originally made was continued in force to the date of the filing of the lien. We cannot indulge in a legal fiction in order to give the appellant some rights. We must not assume that there was a new hiring each month nor can we indulge in the assumption that there was a new hiring each month because the parties had a right to terminate it, especially in the face of the allegations of the complaint that he made a contract in January, 1889, and continued down to 1895. The appellant has destroyed all possibility of indulging in presumptions by the allegations of his complaint.

The appellant insists that although he had no right under the original contract, yet because he did work after the amendment therefore and in that case he might have a lien. We shall not undertake to dispose of this abstract legal proposition and decide that there are no cases to which the amendment would apply. If the plaintiff had made a contract with the owners of the property so that his contract would have supported a lien and the amendment contained a provision to protect that sort of work, it might be, though we do not decide, the question whether the provisions of the act as amended would be applicable might be presented. The possibility of this however is entirely foreclosed by the consideration that he never had any contract with the owners. When he made his agreement he made it with persons without title. This contract continued in force from its inception to its conclusion without change or modification and when it appears he did not contract with the owners nor with anybody who represented them, nor with anybody who had a title he cannot because they got title afterwards and because the act was amended bring his case within the operation of the amended act. As made, his contract was fundamentally bad for the purposes of a lien. Having been unchanged

from its origin to its end, it is impossible by presumption or deduction to give it life for the purposes of a lien.

There are some other questions suggested in the arguments of counsel, but since these propositions wholly dispose of the appeal and justify the judgment which was entered on the demurrer, we need proceed no further with the discussion, but conclude the opinion with the simple affirmance of the judgment.

*Affirmed.*