[No. 7355.]

YOUNG v. THE PEOPLE.

1. PRACTICE—*Change of Venue—Application*—An application for a change of venue under Mills' Stat., sec. 4613 (Rev. Stat., sec. 6963), must be verified by the defendant in person. An application not so verified is properly denied.

2. ——*Prejudice of Judge*—Where an application for a change of the venue assigns as the ground thereof prejudice on the part of the judge, affidavits expressing merely the belief of the affiant that the applicant can not have a fair trial, etc., because of the prejudice of the judge, not averring any fact upon which the belief is based, are insufficient. The requirement in the present statute that prejudice of the judge must be *shown* is of the same effect as the earlier statute by which the facts were expressly required to be stated.

3. CRIMINAL LAW—*Former Jeopardy*—Conviction of murder in the second degree. Judgment reversed for error in law. Under the constitutional provision (sec. 18, art. II,) the accused stands in the same position as if the first trial had never been had. He may be put upon trial for the highest degree of the crime.

4. ——*Instructions—Homicide—Presumptions*—On the trial of an information for wilful murder the court charged that where the homicide is committed "with a weapon calculated to produce and actually producing death, malice may be legitimately inferred, in the absence of proof that the act was done in necessary self-defense or upon sufficient provocation, and the presumption in such case will be that the act was voluntary, and committed with malice."

*Held*, that the jury were not required to infer malice, but advised merely that such inference would be legitimate; that the question of malice was left to the jury. And the court having further charged that malice is not presumed in law, but for the jury to determine from the evidence, that it was not a subject of legal presumption, or inference, and that each fact necessary to establish the guilt of the accused must be proven beyond a reasonable doubt, by evidence of facts and circumstances consistent with the prisoner's guilt, and inconsistent with any other reasonable conclusion, *held*, that any implication that malice was to be inferred as matter of law, was removed.

5. PRECEDENTS—*Effect*—Expressions of the court upon a question incidentally presented are without authority.

*Error    to    Montrose    District    Court.*—Hon. SPRIGG SHACKLEFORD, Judge.

Mr. T. J. BLACK, Mr. O. N. HILTON and Mr. CAESAR A. ROBERTS, for plaintiff in error.

Mr. BENJAMIN GRIFFITH, attorney general, and Mr. PHILIP W. MOTHERSILL, assistant attorney general, for the people.

Mr. Justice Bailey delivered the opinion of the court:

This cause has been in this court once before from a judgment on a verdict of conviction of murder in the second degree, which was reversed solely on a question of law, in that it was there held that the trial court failed to properly instruct the jury upon the matter of self-defense, on which reliance was had for acquittal. *Young v. The People,* 47 Colo. 352. Upon a new trial the defendant was again convicted of murder in the same degree, and brings the case here a second time for review, alleging numerous errors. On this review the defendant raises no question of the sufficiency of the testimony to support the verdict; indeed there is no room for such claim on any reasonable basis, as the testimony is ample to support it, as it would have been had the verdict been one of murder in the first degree. The errors relied upon go mainly to questions of procedure, and relate particularly to change of venue, former jeopardy, and objections to instructions given and refused.

On October 24th, 1910, the day before the trial was to begin, according to a previous setting, counsel for the defendant filed a motion to change the venue on the ground of bias and prejudice of the judge. This motion was supported by two affidavits, identical in subject-matter and verified, respectively, by the two record attorneys of the defendant. The motion was based specifically, as shown by the affidavits, on section 4613 of 2 Mills' Annotated Statutes, and, omitting formal parts, is as follows:

"Comes now the defendant Henry Young and presents this, his motion, and moves the court to change the venue of this cause to some other court of competent jurisdiction in this county or some other county, or notify and request the judge of some other court, having jurisdiction of a like offense to try the said cause, because the said presiding judge, the Hon. Sprigg Shackleford, is so biased and prejudiced against this defendant that he cannot have a fair and impartial trial of his said cause before said presiding judge and in

support of his said motion tenders herewith the affidavit of two credible persons not related to this defendant."

One of the affidavits was by O. N. Hilton, the other by T. J. Black, precisely alike except the name of the affiant. The Hilton affidavit follows:

"O. N. Hilton being duly sworn says on oath, that he is a citizen of the state of Colorado and has been such citizen for more than twenty years past; that the defendant above named is on trial for a felony, being a criminal cause now pending in the district court of said county, before the Hon Sprigg Shackleford, the presiding judge thereof; that it is the belief of affiant that the said defendant, Henry Young, cannot have a fair and impartial trial before the said presiding judge, the Hon. Sprigg Shackleford, because of the prejudice and bias of the said judge against the said defendant; that this affiant is not in any manner related to the said defendant Henry Young and makes this affidavit in accordance with section 4613 of Mills' Annotated Statutes of Colorado to show the prejudice of said judge against the said defendant Henry Young." Duly sworn and subscribed.

These affidavits comprise the entire showing to support the motion, which was signed by the attorneys only. Under the statute this application is insufficient, not only in form, but like wise in substance. The statute provides, among other things, that:

"Every application for a change of venue shall be by petition, verified by the affidavit of the defendant," etc.

It is at once apparent that the application does not at all comply with the statute. It is not only not signed by the defendant, but it is unverified. Verification by the defendant is a substantial requirement. By this application no sworn complaint whatever against the trial judge was presented. In the absence of a verified charge by the defendant, in substantial conformity with the statute, the application is fatally defective. Furthermore, the section of the statute on which the application is specifically based provides:

"Third. When the judge is in any wise interested or prejudiced, or shall have been of counsel in the cause, such prejudice of the judge must be shown by the affidavit of at least two credible persons not related to the defendant."

How can it be fairly said that the prejudice of the judge has been shown when the only allegation is the bare statement of a belief that the defendant cannot have a fair and impartial trial, because of the prejudice and bias against him of the presiding judge? There is no showing of fact which discloses that any such prejudice or bias actually exists. The mere expression of a belief that the judge would not give the defendant a fair and impartial trial, without the statement of a single fact upon which such belief is based, is in no sense a compliance with the requirements of the statute, that the prejudice of the judge must be shown. It would be a travesty upon justice, and in direct conflict with sound common sense to permit such a showing to effect a change of venue in a criminal cause under such a statute. It has been the policy of this state from the earliest times to require the disclosure of sworn facts showing the prejudice of the judge, and such facts must be sufficient to require the change. Under early statutes upon this subject there was a specific requirement that the facts showing the prejudice be set forth in the application, and the affidavits filed in support thereof. The requirement under the present statute, that the prejudice of the judge must be shown, is equivalent to that contained in the earlier ones.

In the case of *Solander v. The People,* 2 Colo. 48, this court, passing upon an application for change of venue for prejudice of the judge, said:

"It is plain that the petitioner must now set forth in his petition the ground upon which the venue may be changed, as, that the judge or the inhabitants of the county are prejudiced against him, and also the facts which lead to the belief that such ground exists. Affidavits may be filed to show the truth of these facts, and if the ground upon which the change

is asked sufficiently appears, the prayer of the petitioner will be granted; otherwise it should be denied.

In support of the allegation that the judge was prejudiced against her, petitioner averred that she had heard that the judge had expressed the opinion that she was guilty of the crime charged, and that, at a former term of court, he had tried to prevent her from procuring bail in the cause. The mere statement that she had heard such rumors, there being no averment as to the truth of them, may be dismissed without comment."

In *Mullin v. The People,* 15 Colo. 437, speaking to this proposition, under the present statute, it was said:

"In some jurisdictions, when a change of venue is asked on account of the prejudice of the presiding judge, it is not necessary to set forth in the petition the fact or facts on which the party bases his fears that he will not receive a fair trial in the court wherein the cause is pending. But in this state such facts must be stated, although with not the same particularity as is required in cases in which the application is based upon the alleged prejudice of the inhabitants of the county."

Our own authorities seem clear upon this point and we need not look elsewhere. The reason for such requirement is obvious, else the mere filing of an application and affidavits simply expressing a belief that, because of the bias and prejudice of the judge, a fair and impartial trial could not be had, would work a change of venue in any criminal cause. The statute is incapable of any such construction; its plain meaning is to the contrary. The hardship, delay and impossibility of bringing offenders to justice in many cases, if the venue might be thus readily and easily changed, is manifest. The motion was properly denied.

The defendant was convicted upon the first trial of murder in the second degree, on an information charging first degree murder. On writ of error from this court, the judgment entered on that verdict was reversed for failure of the trial

court to fully instruct upon the subject of self-defense. On a second trial the defendant was again convicted of murder in the second degree, the trial having been conducted as though no previous trial had been had. The claim is that having been once convicted of second degree murder, the defendant was by the verdict acquitted of first degree murder, and on a second trial could not be put in jeopardy of punishment for a crime higher in degree than that of which he was first convicted.

By section 18 of article II of the constitution of the state, it is provided:

"That no person shall be compelled to testify against himself in a criminal case nor shall any person be twice put in jeopardy for the same offense. If the jury disagree, or if the judgment be arrested after the verdict, or if the judgment be reversed for error in law, the accused shall not be deemed to have been in jeopardy."

This provision of the constitution needs no construction; it is as plain and clear as language can make it. It means: First. If the jury disagree, that the accused may be tried again upon the charge as if no trial had been had; Second. If the judgment be arrested after the verdict, for any reason, that the defendant shall be deemed not to have been in jeopardy, and may be again tried as originally; and Third. If the judgment be reversed for error in law, that then the defendant shall be deemed not to have been in jeopardy, and may be again tried under the information, upon every charge contained in it. If the defendant in this case had not been in jeopardy, and such is declared to be the fact upon the record, by this provision of the constitution, the former judgment having been reversed for error in law, then he could be lawfully tried for and convicted of the highest degree of crime contained in the charge. Upon a reversal of a conviction for error of law, under this provision, one accused of murder stands as though there never had been a former trial; his second trial is *de novo*. The same presumption of his innocence

of any degree of unlawful homicide, although he has been convicted of one degree thereof, prevails as upon the first trial. The accused stands upon a second trial as though the former trial had never taken place, and the state stands in precisely the same position. This is the evident purpose and intent of the framers of our constitution. Unless it be assumed that the criminal laws are designed to facilitate the escape from just punishment of those charged with offenses, instead of for the protection of society through punishment of those who violate its laws, the above interpretation must be accepted as correct.

The argument advanced in the cases cited in behalf of the defendant in support of his position of former jeopardy, is that a conviction of a lesser degree of homicide is an acquittal of all higher degrees of that crime. This is undoubtedly true so long as that conviction stands, for no one should be twice punished for the same offense. But where, as here, such conviction has been set aside, on review, for error in law committed by the trial court, then by the constitutional provision under consideration the implied acquittal of the higher offense charged in the information is completely overthrown.

It is to be noticed that section 18 of article II, above quoted, upon the question of former jeopardy, differs widely from corresponding provisions found in the constitutions of those states where the doctrine is held that one convicted of murder in the second degree, under an information charging murder, cannot, on a new trial, be tried for a greater degree of crime than that of which he was first convicted. The constitutions of states so holding simply have the provision, in substance, that no person shall be twice put in jeopardy for the same offense. They do not have the further provision, found in our constitution, that if the judgment be reversed for error in law the accused shall not be deemed to have been in jeopardy. For this reason the cases from the various states, holding as above indicated, are not in point in deter-

mining the question of former jeopardy under a constitutional provision such as ours.

Several of the states have either constitutional or statutory provisions in effect like the one now before us, and in those states it has been uniformly held that upon a new trial the accused cannot plead former jeopardy, though the first trial resulted in a conviction of a degree of crime less than the highest one contained in the charge. The constitution of Georgia provides:

"No person shall be put in jeopardy of life, or liberty, more than once for the same offense, save on his or her own motion for a new trial after conviction, or in case of mistrial."

The case of *Waller v. State*, 104 Ga. 505, was determined under this provision. In that case Waller was indicted for the offense of murder, put upon trial and convicted of that offense. He moved for a new trial, and when this motion was denied, took the case to the supreme court, where the judgment was reversed and a new trial granted. He was again tried in the lower court and convicted of voluntary manslaughter, and the judgment upon that verdict was also reversed and a new trial awarded. Upon a third trial, when arraigned in the lower court, he filed pleas setting up that he had been acquitted of the crime of murder by the verdict of the jury pronouncing him guilty of voluntary manslaughter, and could not therefore be again put in jeopardy on an indictment of murder, and submitted himself for reindictment for voluntary manslaughter. This plea was overruled and Waller convicted of voluntary manslaughter. He once more took the case to the supreme court for review of the question of former jeopardy. In the course of its opinion on this proposition, the supreme court of that state said:

"Prior to the constitution of 1865 all of the constitutions of this state had read, in regard to this matter: 'No person shall be put in jeopardy of life, or liberty, more than once for the same offense.' Under the same or a similar provision

many courts had held that a person who had been tried for murder, and convicted of a lower offense, was by the verdict acquitted of the higher offense and could not be again put upon trial for it.   When the constitutional convention of 1865 met and organized, Charles J. Jenkins was appointed chairman of the committee to draft a new constitution.   He was at that time a member of the supreme court of Georgia, and had served for several years.   Judge Jenkins had doubtless read the various opinions of the courts and text-writers upon this question; and in order to put the question at rest in this state, he added to the provision of the older constitutions the words: 'save on his or her own motion for a new trial after conviction, or in case of mistrial.'   This addition was adopted by the convention   *   *   *   and forms part of our present constitution.   If, prior to its adoption, the accused had the absolute right to which many of the decisions above referred to held him entitled, this right has since that time existed only in a modified form.   The state said to the accused:   'If you are indicted for a major offense and convicted of a minor, and a new trial is granted upon your own motion, you may be a second time tried for the major offense.   *   *   *   The state, for the purpose of protecting society against crime and criminals, reserved the right to place more than once upon trial for the same offense persons accused of crime who had upon their own motion been granted new trials.   Waller made this motion for a new trial and obtained it with a knowledge of this constitutional provision.   He therefore can not complain of his having been again put upon trial for murder, although the jury may, in the other trial, have found him guilty of manslaughter only."

The Missouri constitution provides:

"That no person shall be compelled to testify against himself in a criminal cause, nor shall any person, after being once acquitted by a jury, be again, for the same offense, put in jeopardy of life of liberty;   *   *   *   and if judgment be arrested after verdict of guilty on a defective indictment, or

if judgment on a verdict of guilty be reversed for error in law, nothing herein contained shall prevent a new trial of the prisoner on a proper indictment, or according to correct principles of law."

In *State v. Simms,* 71 Mo. 538, considering the question of a plea of former jeopardy under that provision, the court said:

"As this cause will be remanded, it may be well to observe that sec. 10 of art. XIII of the constitution of 1820, which provides that 'no person having once been acquitted by a jury can, for the same offense, be again put in jeopardy of life and limb," * * * and under which the case of the *State v. Ross, supra,* was decided, has been materially changed by section 23, article II of the constitution of 1875, by the addition to what has been copied of the following words: 'And if judgment be arrested after verdict of guilty, on a defective indictment, or if judgment on a verdict of guilty be reversed for error in law, nothing herein contained shall prevent a new trial of the prisoner on a proper indictment, or according to correct principles of law.' The change thus made in the said section overthrows the rule laid down in the case of the *State v. Ross, supra,* that a person who is indicted for murder in the first degree, if tried and convicted of murder in the second degree, which judgment is reversed for error in law, cannot on a second trial be tried for murder in the first degree. They are equivalent to declaring that when such a judgment is reversed for error at law, the trial had is to be regarded as a mis-trial, and that the cause when remanded is to be tried anew, and when remanded, that it is put on the same footing as to a new trial as if the cause had been submitted to a jury resulting in a mis-trial by the discharge of the jury in consequence of their inability to agree on a verdict. It is difficult to conceive what other construction can be given to the words added to said section."

In *State v. Billings,* 140 Mo. 193, speaking to this proposition, it was said:

"It was held in *State v. Ross*, 29 Mo. 32, that one indicted for murder in the first degree, and put upon his trial, and convicted of murder in the second degree, and a new trial granted upon his application, could not legally be put upon trial again for murder in the first degree. But by article II, section 23, constitution of Missouri, that decision is no longer law in this state. A defendant convicted of murder in the second degree under an indictment for murder in the first degree may now be awarded a new trial, and, when granted, he may be again put upon trial for murder in the first degree."

In some states there is a statute which has the same effect as our constitutional provision, most of which are substantially in the words of the Indiana statute, which provides as follows:

"The granting of a new trial places the parties in the same position as if no trial had been had; the former verdict cannot be used or referred to, either in the evidence or argument."

In *Veatch v. State*, 60 Ind. 291, in reference to a reversal of a conviction for manslaughter under indictment charging murder, on plea of former jeopardy of the higher grades of the offense charged, the supreme court of Indiana had this to say:

"On the trial, the defendant offered in evidence the record of the former conviction in the cause, 'as proof of his former acquittal of murder in the first and second degrees, and for no other purpose,' but the evidence was excluded.

The theory of the appellant is, that the former verdict, which was for manslaughter only, operated as an acquittal of murder in either of its degrees; and that, upon a subsequent trial, he could not be convicted of murder in either degree. The constitution, it is true, provides, that 'No person shall be put in jeopardy twice for the same offense.'

But there are many cases in which this constitutional provision is deemed to have been waived. Thus, if one is convicted of an offense, and obtains a new trial, either in the

court in which the case is tried, or on appeal or writ of error, he is deemed to have waived the constitutional provision, and may, of course, be put upon trial the second time for the same offense, and so on as often as he obtains a new trial.   The statute regulating criminal pleading and practice provides, that 'the granting of a new trial places the parties in the same position as if no trial had been had; the former verdict cannot be used or referred to, either in the evidence or argument.' 2 R. S. 1876, p. 408, sec. 141.

Now, it would seem, that, if a party takes a new trial in a criminal case, he takes it on the terms prescribed by the statute, and consents to be placed 'in the same position as if no trial had been had.'   If this is so, where a party has been tried on an indictment for murder, and convicted of manslaughter, and has obtained a new trial, he may, upon the new trial, be convicted of murder; for, by obtaining the new trial, he consented to be placed in the same position as if no trial had been had.   But, however this may be, the appellant was not injured by the rejection of the evidence, for he was not convicted of murder, but of manslaughter only."

In the case of *Ex Parte Bradley,* 48 Ind. 548, the supreme court of that state, discussing the question of former jeopardy at considerable length, under both the common law and the statute quoted above, upholds the rule that where the accused is convicted of murder in the second degree or manslaughter under a charge of murder, and secures a reversal of that judgment, he may be again tried for murder in the first degree.   In *People v. Palmer,* 109 N. Y. 415; *Commonwealth v. Arnold,* 83 Ky. 1; *Briggs v. Commonwealth,* 82 Va. 554; and *State v. McCord,* 8 Ka. 232, the same rule is announced, all under statutes substantially like that of Indiana.   *In re Somers,* 31 Nev. 541, a case under a statute similar to those above referred to, the supreme court of that state, reviewing at considerable length the authorities relative to former jeopardy, overruled the contention of the defendant, that upon

a new trial brought about by his own application he could not be tried for a higher degree of the offense than that of which he had been convicted.

It becomes unnecessary, as already indicated, to consider or comment on the many cases from various states announcing a different rule, where the sole provision for consideration is in effect that no person shall be twice put in jeopardy of life or liberty for the same offense, since such decisions can have no application to a like question, considered under the peculiar provisions of our constitution on this subject.

In several states, however, the rule is upheld that, upon a new trial, a previous conviction having been set aside, the plea of former jeopardy of the higher grades of the offense charged than the one on which conviction was had, is unavailing, even without the aid of a constitutional provision such as ours, or statutory provisions similar to those heretofore considered, notably, in South Carolina, in *State v. Gilles,* 73 S. C. 318; Ohio, in *State v. Beheimer,* 20 Ohio State 572; Utah, in *State v. Kessler,* 15 Utah 142; Nebraska, in *Bohanan v. State,* 18 Neb. 57; Oklahoma, in *Turner v. Territory of Oklahoma,* 15 Okla. 557; and Vermont, in *State v. Bradley,* 67 Vt. 465.

In *Trono v. United States,* 192 U. S. 521, the United States supreme court definitely declared the same doctrine. In that case the rule announced in *People v. Palmer, supra,* was specifically approved, and the statutory provision in New York, there under consideration, that 'the granting of a new trial places the party in the same position as if no trial had been had, and when a new trial is ordered it shall proceed in all respects as if no trial had been held,' was declared not to contravene the constitutional provision that no person shall be twice put in jeopardy for the same offense. The doctrine of the *Trono* case was reaffirmed in *Flemister v. United States,* 207 U. S. 372. If, by statutory provision, a defendant may upon a new trial be lawfully held to answer

to a higher degree of an offense than that of which formerly convicted, then certainly it is competent to so provide by a constitutional provision.

It is urged by counsel for the defendant that by previous opinions of this court a different rule from the one here stated has been indicated. It is sufficient to say that never before has this court been called upon to directly consider or determine this question, and anything which may have been heretofore said, indicative of a view contrary to that here declared, was purely incidental, and in cases where that question was not properly before the court for determination. Such expressions are, therefore, in no sense authority upon the proposition.

Of the instructions of the court, it is complained generally that at this trial instructions were again given which had been condemned in our former opinion, and that some which had been expressly approved were not given. A careful inspection of the record fails, in any true sense, to support these contentions. Of the three instructions, which it is claimed were condemned in the former opinion, *Young v. People, supra,* this court spoke as follows:

"The first instruction is the statutory definition of justifiable homicide, and the other two are mere negative instructions, given on behalf of the people, specifically pointing out certain conditions, circumstances and situations, under which the defendant may not avail himself of that defense. They do not purport to state the law of this subject *in extenso,* or with any degree of fulness. They were entirely proper for the purpose intended, but under the conflicting testimony, touching the facts immediately surrounding the homicide itself, the defendant had a constitutional right to have a lucid, accurate and comprehensive statement by the court to the jury of the law on the subject of self-defense from his standpoint, upon the supposition that the jury might believe, and accept as true, his testimony, and that of his witnesses, explanatory of the encounter which resulted in the death of Wilkinson."

From the foregoing it is apparent that these instructions were not condemned. They are declared to be entirely proper for the purpose intended. It was there further held, in substance, that the defendant was entitled to have affirmative instructions covering the law of self-defense from his standpoint, which were not given, and it was solely because of the failure to so further instruct that the former judgment was reversed and the cause remanded. It is plain that if upon the former trial the court had, in addition to those instructions, given instructions embodying the defendant's right to act upon appearances, even though such appearances may have been deceptive, and also covering generally the rights of one claiming to act in self-defense, then the charge which contains these instructions would not have been a proper subject of criticism. On page 300 of the opinion in the former case, this court quoted two instructions, numbered one and five, which were requested by the defendant on the first trial and refused by the court, stating the law as to the rights of the defendant relative to self-defense as announced in the opinion of the court, at page 355, where it is said:

"It is fundamental that the law of self-defense, which is emphatically a law of necessity, involves the question of one's right to act upon appearances, even though such appearances may prove to have been deceptive; also the question of whether the danger is actual or only apparent, and as well the fact that actual danger is not necessary, in order to justify one in acting in self-defense. Apparent necessity, if well grounded and of such a character as to appeal to a reasonable person, under like conditions and circumstances, as being sufficient to require action, justifies the application of the doctrine of self-defense to the same extent as actual or real necessity."

In the former opinion the court did not specifically direct that these instructions, numbered one and five, should have been given. What it did say, at page 361 of that opinion, was this:

"While we do not say that these particular instructions should necessarily have been adopted, what we do say is, that under the facts it is clear that proper instructions, either like those requested or their equivalent, covering the defendant's right to act upon appearances, that actual danger is not indispensable to warrant one acting in self-defense, and that the defendant, acting as a reasonable person, had a right to judge for himself of the danger, should have been given. A single instruction covering this entire phase of the case could easily have been framed by the court for the jury."

The inquiry of the court will now be directed, not to the question as to whether these specific instructions were given, as there was no direction that they should be, but as to whether the court did in fact give instructions upon the law of self-defense, such as the defendant was entitled to have, and while it is asserted by counsel that no such instructions were given, the record discloses the fact to be precisely the contrary. Instructions numbered nineteen and twenty-five, respectively, requested by the defense at the trial, were given, and fully and accurately state the law upon this subject. They were quite as favorable to the defendant as were instructions numbered one and five, which this court approved. It satisfactorily appears from the whole record that all of the rights of the defendant on his theory of the case upon the law of self-defense, under the evidence adduced, were fully protected by the instructions of the trial court in the present case, in strict compliance with the suggestions of this court in its former opinion.

Instruction number four, given by the court, reads as follows:

"The jury are instructed that when the killing is done with a deadly weapon, or weapon calculated to produce, and actually producing death, malice may be legitimately inferred in the absence of proof that the act was done in necessary self-defense or upon sufficient provocation or cause, and the

presumption in such, case will be that the act was voluntary and committed with malice aforethought."

This is vigorously attacked as invading the province of the jury, for failure of the court to say that such presumption only obtains where the killing has been shown to have been deliberate and unlawful. The words, "in the absence of proof that the act was done in necessary self-defense or upon sufficient provocation or cause," characterize the killing as unlawful, and clearly, as we think, leaves the question as to whether malice had been shown as one of fact for the jury, upon the whole testimony. If testimony was adduced showing or tending to show necessary self-defense, or sufficient provocation or cause for the act, then, under this instruction, the jury was free to reach a conclusion upon the question of malice from all of the facts and circumstances before it. It was only in the entire absence of testimony showing or tending to show necessary self-defense, or sufficient provocation or some cause which justified or explained the act, that the jury was permitted, if they should see fit from all of the facts before them to do so, to draw the presumption of malice from the use of the weapon to which the instruction referred. They were not instructed that they should draw such a conclusion, but advised merely that it would be legitimate to do so under the circumstances and conditions suggested. So that the question of malice after all was left to the jury to determine from the testimony as a fact. In other words, if the instruction had said, where the killing is unlawful, and done with a deadly weapon, malice may be implied, that clearly would have been been proper; and in the present case we are of the opinion that the words of limitation used in the instruction given are equivalent to the use of the word unlawful, to describe the character of the killing referred to in the instruction. Furthermore, the jury were instructed upon the question of malice as follows:

"The court instructs the jury that malice is not a presumption of law, but a fact for the jury to determine from the evidence, under the instructions of the court."

The jury were also instructed upon the question of intent in this language:

"The court instructs the jury that the intention of the accused at the time of the killing, is to be ascertained by the jury upon the evidence, and cannot be made the subject of legal presumption or inference."

And further, the court, having theretofore instructed the jury that malice was one of the essential elements to be found from the testimony in order to convict the defendant of the crime of murder, instructed as follows:

"The court instructs the jury that, to warrant a conviction, each fact necessary to establish the guilt of the accused must be proven by competent evidence beyond a reasonable doubt, and the facts and circumstances proven should not only be consistent with the guilt of the accused, but inconsistent with any other reasonable hypothesis or conclusion."

These instructions are sufficiently explicit upon the question, that malice was a fact to be proven and determined as a fact by the jury, to remove any implication, in the instruction of which complaint is made, that the jury should as a matter of law infer malice or intent to kill from any particular or special fact or circumstance. Furthermore, this precise instruction has been specifically approved by this court in its opinion in the case of *May v. The People,* reported in 8 Colo. 210, where it, with other instructions quoted, is characterized as follows:

"The court gave the jury twenty-six instructions, sixteen of which were upon the court's own motion, the other ten upon the motion of the counsel for the prisoner; and for the reason that, in my opinion, these instructions furnish in themselves better proof of their correctness, lucidity and comprehensiveness in their application to the facts of the case, and under our statutes relating to murder and manslaughter in

force at that time, than could be made by any discussion of them simply with reference to the verdict complained of, they are inserted here in full."

Repeatedly throughout the instructions the court directed that the jury should make their findings upon the testimony in the case, and particularly directed the jury to treat and consider the instructions as a series, that no one instruction stated all the law, but that the instructions were to be taken and considered together as the law in governing the jury in applying the law to the facts. The jury could not have failed to understand, from all of the instructions, that they were to determine the character of the killing, the question of justification, and all the necessary elements to determine the guilt or innocence of the defendant from all of the facts and circumstances disclosed by the testimony, taken and considered as a whole. From a complete survey of the record, including all testimony introduced and instructions given, we have no hesitancy in reaching the conclusion that the giving of instruction number four was not misleading, and that no prejudicial error was occasioned thereby.

The refusal of the trial court to give certain instructions asked on behalf of the defense is urged as a ground of complaint. There was no error in such refusal, since every proposition sought to be covered by those instructions was fairly covered by the instructions which were given, and this court has repeatedly declared that it is not error to refuse to give instructions which are merely cumulative.

It is further urged that the testimony of Gass, Taylor and Pitts, taken at the former trial, was improperly introduced in evidence at this trial. The testimony taken showed that the witness Gass was absent from the state, located in Missouri, beyond the jurisdiction of the court, and that the witnesses Taylor and Pitts were dead. The questions of whether the absence of Gass from the state, and the death of the witnesses Taylor and Pitts had been satisfactorily established, was primarily a matter for the trial court, and that

court having held that these matters were sufficiently shown,. such finding will not be disturbed if it is fairly supported by the testimony. Upon this subject we have carefully examined the record, and are satisfied that the findings of the court. in this respect are supported by clear and convincing testimony. When these facts were established, then the testimony taken at the former trial, preserved and identified by bill of exception, was clearly competent in evidence at this trial. The contention is made that this testimony was introduced from stenographic notes. The record does not support this claim. On the contrary, it was from the bill of exceptions, made a part: of the record at the former trial and used in this court upon review of that judgment, that the testimony of these three. witnesses were read into the present record. That testimony was duly authenticated, certified and sealed by the trial judge, as being all of their testimony introduced at the former trial,. both on direct and cross examination. The bill of exceptions was further identified by the official stenographer, who also testified that it contained all the testimony of these three witnesses adduced, offered and received at the first trial. It was; therefore properly received.—*Rico R. & M. Co. v. Musgrave,* 14 Colo. 79; *Emerson v. Burnett et al.,* 11 Colo. App. 86; 16 Cyc. 1088, 1096 and 1097, subject Former Evidence.

Other errors are assigned, which we have carefully examined. They are without merit and need not be further considered or discussed. Upon the whole record, we are convinced that the defendant had a fair and impartial trial, that the verdict was fully warranted under the law, upon the facts shown, and that the judgment upon the verdict is a just and. proper one, which should not be disturbed.

*Judgment affirmed.*

Decision *en banc.*